# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Toney*, 2011 IL App (1st) 090933

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MALCOLM TONEY, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-09-0933 |
| Filed | September 19, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for second degree murder, the appellate court held that defendant was not arbitrarily denied his right to present witnesses when a witness who asserted his right against self-incrimination was found to be completely unavailable to testify as a defense witness, that defendant, who was 16 years old at the time of the offense, was properly sentenced as an adult, and that his 18-year sentence was not excessive. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2007-CR-20732; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier and Daniel T. Mallon, both of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Matthew Connors, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Justice Lampkin concurred with the judgment of the court and the opinion.<br>Presiding Justice Hall dissented in part, with opinion. |

**OPINION**

¶ 1      Defendant, Malcolm Toney, was convicted of second-degree murder following a bench trial. Although defendant was a minor at the time of the offense, he was tried and sentenced as an adult to 18 years' imprisonment. On appeal, defendant asserts that: (1) the trial court improperly found a potential defense witness to be unavailable at trial on the basis of the witness's assertion of a right against self-incrimination; (2) the trial court incorrectly sentenced him as an adult; and (3) his sentence of 18 years' imprisonment was excessive. For the following reasons, we affirm.

¶ 2                        I. BACKGROUND

¶ 3      In September of 2007, defendant was charged by indictment with six separate counts of first-degree murder. The charges generally alleged that on July 31, 2007, defendant shot and killed Clinton Washington (hereinafter the victim). A bench trial on the first two counts of first-degree murder was held in January of 2009.

¶ 4      The evidence at trial established that in July of 2007, defendant was 16 years old and lived on the west side of Chicago. Defendant testified that early in the evening of July 31, 2007, he and his friend Pierre Blackney walked to Douglas Park to attend a birthday party. He further testified that as the two walked to the park, Blackney asked defendant to hold a handgun because Blackney's pants were too tight for the weapon. Defendant agreed to hold the gun in his back pocket, and he testified that the gun was old and appeared to be missing some pieces near the trigger.

¶ 5      Defendant and Blackney joined the party, which was also attended by Sedale Cummings and Tiffany Thomas. A few hours later, the victim, DeShawn Hayes, Don Hicks, and Rasheed Thomas arrived at the park in the victim's car. Sometime during the week prior to

the party, the 23-year-old victim had been "jumped" and beaten up. The victim and his three companions therefore drove to the park in an attempt to find those responsible.

¶ 6    When they arrived, the victim approached defendant and Blackney and confronted them about the previous incident. Blackney responded by punching the victim in the face, and a number of individual fights ensued involving the victim, defendant, Blackney, Cummings, Hayes, Hicks, and Thomas. No weapons were involved in any of these altercations.

¶ 7    Among these fights was one between the victim and Blackney. Hicks testified that during this fight, the victim had Blackney "choked up" or "wrapped up in a bear hug." Defendant also testified that the victim was choking Blackney. Several witnesses testified that as the victim and Blackney were fighting, defendant was standing nearby. Defendant was yelling at the victim to let Blackney go, and at some point defendant produced a gun. Hicks testified that defendant indicated that he did not want to have to shoot the victim, and Thomas testified that she saw defendant strike the victim in the head twice with the gun. Ultimately, defendant shot the victim once in the back of the head. At trial, defendant testified that he only produced the gun because it appeared that the victim was going to choke Blackney to death and felt threatened himself. Defendant stated that he never intended to shoot the victim and that the gun simply went off when he hit the victim in the back of the head. After the shooting defendant ran away from the scene and discarded the gun, but he was arrested on September 4, 2007.

¶ 8    The victim was taken to the hospital, where he died on August 1, 2007. Dr. Tera Jones, an assistant medical examiner, testified that the victim died as a result of a single gunshot wound to the rear of his head. She also testified that evidence of a close-range shooting generally included soot and small scratches and abrasions near the gunshot wound. She found no such evidence in this case, but did acknowledge that any soot could have been washed away if the victim's wound was cleaned at the hospital. However, Dr. Jones indicated that any abrasions resulting from a close-range shooting would not have been cleaned away.

¶ 9    During the trial, defendant attempted to call Blackney–who was present in court pursuant to a defense subpoena–as a defense witness. However, after consulting with his own attorney, Blackney indicated that if called to testify he would assert his fifth amendment privilege against self-incrimination. The trial court therefore asked defense counsel about the questions he would seek to ask Blackney absent any such assertion of privilege. The following exchange then occurred:

"MR. STACH [defense counsel]: Judge, I would start with how tall are you and how much do you weigh.

THE COURT: Go on.

MR. STACH: I would then ask him if he was the same height and approximately the same weight 18 months ago on July 31, 2007.

I would ask him on July 31, 2007, was he at a party in Douglas Park with his nephew, who was two years old. His nephew is by his half brother, Sedale Cummings; had he come to the party with his friend Malcolm Toney.

During the walk over to the party, did Pierre Blackney hand Malcom Toney a small caliber handgun and Malcom Toney agreed to hold that small caliber handgun

-3-

for him until the party was over.

I would ask Mr. Blackney where he got that gun and if he knew if that gun was capable of firing, if that gun had obvious defects to it which would make it possible for it to fire even if the trigger or the hammer was not pulled or the hammer fell; if Mr. Blackney saw a defect in the trigger mechanism.

I would ask Mr. Blackney if while he was at that party he was approached by a man who was much taller than him, much heavier than him, was in fear for his safety and in defense of himself because he thought he was about to get hit struck the first blow to the much bigger, much taller, much heavier, much older man; that during the course of the fight that much older, bigger, taller man, [the victim], got Mr. Blackney in a severe disadvantage and that Mr. Blackney was in fear for his own life and at that point his friend, Malcolm Toney, came to his aid by hitting [the victim] with the gun and while he was being hit–while [the victim] was being hit with the weapon did the weapon discharge and kill [the victim].

\* \* \*

THE COURT: Any reason he shouldn't be allowed to take the Fifth Amendment on those questions about him bringing a gun to this incident that you can tell me?

MR. STACH: I think he has a legitimate Fifth Amendment right–

THE COURT: So do I.

MR. STACH: –based upon my investigation of this case and speaking to witnesses.

THE COURT: Just trying to make a record here.

The fact is I have already heard that this man was present at the scene. I am understanding now the questions you wanted to elicit from him under oath.

\* \* \*

I cannot find any reason that a Fifth Amendment privilege ought not to be recognized, so he will not be available to you as a Defense witness."

¶ 10   After both sides rested, the trial court heard closing arguments. The State argued that defendant intentionally shot the victim in the back of the head and had no reasonably justifiable reason for doing so. The State therefore asked the trial court to find defendant guilty of first-degree murder. Defense counsel argued that the evidence established that defendant did not want to kill the victim and the victim was only shot as defendant was trying to protect his friend Blackney. Therefore, defense counsel asked the trial court to find defendant not guilty of first-degree murder.

¶ 11   The trial court found that defendant was very young and very immature, but he was also the only person involved in this incident with a gun. The trial court did not find credible defendant's testimony about receiving the gun from Blackney or his assertion that the gun accidentally fired as he was using it to bludgeon the victim. Nevertheless, the trial court did find that defendant had a belief–albeit an unreasonable one–that he needed to shoot the victim in order to protect Blackney. The trial court therefore found defendant guilty of second-degree murder.

-4-

¶ 12    Following defendant's conviction, defendant filed an unsuccessful posttrial motion for a new trial. The State in turn filed a motion to have him sentenced as an adult. Defendant objected, and a hearing on the matter was conducted. The trial court determined that defendant should be sentenced as an adult, and following a hearing, sentenced defendant to 18 years' imprisonment. A motion to reconsider that sentence was denied, and defendant has now appealed.

¶ 13                                II. ANALYSIS

¶ 14    As noted above, defendant raises three separate issues on appeal. We address each of these issues in turn.

¶ 15                            A. Witness Availability

¶ 16    Defendant first asserts that he is entitled to a new trial because the trial court improperly found Blackney to be completely unavailable as a defense witness due to an assertion of his right against self-incrimination. As an initial matter we note–and defendant concedes–that any challenge to this ruling has been waived as it was not objected to at trial and was not included in defendant's posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (both a trial objection and a written posttrial motion raising the issue are required to preserve an issue for appellate review). Defendant therefore requests that we review this issue for plain error or, alternatively, find that his trial counsel provided ineffective assistance in failing to object to this ruling below. Because we find that the trial court committed no error, we must reject defendant's assertions with respect to this issue.

¶ 17                            1. Standard of Review

¶ 18    The doctrine of plain error "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). The plain-error doctrine is applied where "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 19    In turn, a claim of ineffective assistance of counsel is judged according to the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Lawton*, 212 Ill. 2d 285, 302 (2004). In order to obtain relief under *Strickland*, a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused defendant prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different. *People v. Wheeler*, 401 Ill. App. 3d 304, 313 (2010).

¶ 20                            2. Fifth Amendment Privilege

¶ 21    The fifth amendment provides, in part: "No person *** shall be compelled in any criminal case to be a witness against himself ***." U.S. Const., amend. V; see also Ill. Const. 1970, art. I, § 10 ("No person shall be compelled in a criminal case to give evidence against himself ***."). Under the fifth amendment, therefore, a "witness in a criminal case may refuse to answer questions which might incriminate him when he has reasonable cause to believe he might subject himself to prosecution if he answers." *People v. Ousley*, 235 Ill. 2d 299, 306 (2009). Thus, "[a] defendant's sixth amendment right to compulsory process does not include the right to compel a witness to waive his fifth amendment privilege." *People v. Edgeston*, 157 Ill. 2d 201, 220-21 (1993).

¶ 22    Moreover, "[t]he privilege extends not only to answers that would in themselves support a conviction but also to answers that might furnish a link in a chain of evidence needed to prosecute the witness for a crime." *People v. Medrano*, 271 Ill. App. 3d 97, 102 (1995). Therefore, "[a] witness may be denied the privilege only when it is perfectly clear, considering all the circumstances, that the answer sought cannot possibly have a tendency to incriminate." *Edgeston*, 157 Ill. 2d at 221. Generally speaking, the privilege against self-incrimination must be liberally construed in favor of the potential witness. *People v. Rosenthal*, 394 Ill. App. 3d 499, 513 (2009).

¶ 23    Nevertheless, "[n]either an unreasonable fear of self-incrimination nor a mere reluctance to testify is a ground for claiming the privilege." *People v. Redd*, 135 Ill. 2d 252, 304 (1990). It is not the witness, therefore, but rather the trial court that determines if "under the particular facts, there is a real danger of incrimination." *Edgeston*, 157 Ill. 2d at 220. While defendant contends that this determination should be reviewed *de novo*, numerous cases have recognized that "[t]he trial court ha[s] the discretion to determine whether the witness has a valid basis for invoking the fifth amendment right against self-incrimination." *Rosenthal*, 394 Ill. App. 3d at 513; *Edgeston*, 157 Ill. 2d at 222 (finding of fifth amendment privilege was "not an abuse of trial court's discretion"); *Redd*, 135 Ill. 2d at 305-06 (recognizing that an improper ruling regarding an assertion of a fifth amendment privilege would be "an abuse of discretion").

¶ 24                        3. Blackney's Claim of Privilege

¶ 25    In this case, defendant concedes that the trial court properly excused Blackney from answering any specific questions about the handgun used to shoot the victim. However, defendant asserts that his trial counsel also proposed a number of other, nonincriminating questions. He therefore argues that the trial court erred by extending Blackney's fifth amendment privilege against self-incrimination to those benign questions and declaring Blackney to be completely unavailable as a defense witness at trial. Defendant contends that this error violated his sixth amendment right to present witnesses. U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall enjoy the right *** to have compulsory process for obtaining witnesses in his favor ***.").

¶ 26    Specifically, defendant contends that he should have been able to question Blackney about his height and weight and his height and weight relative to the victim. Furthermore, defendant asserts that he should have been permitted to question Blackney about how his

-6-

altercation with the victim began, whether he feared for his safety and his life during the fight because the victim "got [him] in a severe disadvantage," and his recollections as to the specific circumstances under which the victim was eventually shot. Defendant argues that he was prejudiced by not being permitted to ask such nonincriminating questions, as Blackney's testimony could have supported his defense that the gun went off accidentally while defendant was trying to protect Blackney from the victim–a "much older, bigger, taller man."

¶ 27    We disagree. While on its face information the questions defendant sought to ask Blackney–such as his height and weight–might seem to be nonincriminating, this information was sought with respect to Blackney's fight with the victim.[1] Specifically, defendant sought to have Blackney testify regarding the specifics of an physical altercation he had with the victim–an altercation that Blackney initiated by punching the victim in the face and that ended with the victim's death. Moreover, these questions were proposed in the context of other questions (and ultimately defendant's own testimony) which attempted to associate Blackney with the handgun used to kill the victim.

¶ 28    As noted above, Blackney's fifth amendment privilege extended "not only to answers that would in themselves support a conviction but also to answers that might furnish a link in a chain of evidence needed to prosecute the witness for a crime." *Medrano*, 271 Ill. App. 3d at 102. We cannot say that the trial court abused its discretion, after considering the circumstances and after being advised of the specific questions proposed, in finding that Blackney's answers could provide an evidentiary link leading to his prosecution or might "possibly have a tendency to incriminate" him. *Edgeston*, 157 Ill. 2d at 221.

¶ 29    Indeed, while there is no indication in the record whether Blackney had been specifically charged with any offense related to the victim's death, the evidence at trial established that he was interviewed by the police regarding his involvement in the incident. Furthermore, " '[a] party who reasonably apprehends a risk of self-incrimination may claim the privilege even though no criminal charges are pending against him [citation] and even if the risk of prosecution is remote.' " *Mueller Industries, Inc. v. Berkman*, 399 Ill. App. 3d 456, 473 (2010) (quoting *10-Dix Building Corp. v. McDannel*, 134 Ill. App. 3d 664, 672 (1985)). Liberally construing the privilege against self-incrimination, we find that the trial court did not abuse its discretion in granting Blackney's request to be excused from testifying at defendant's trial. As such, "defendant was not arbitrarily denied his sixth amendment right to present witnesses." *Edgeston*, 157 Ill. 2d at 222.

¶ 30    In light of this finding, we must necessarily reject defendant's assertion of plain error and his claim that his trial counsel was ineffective for failing to object to this ruling at trial. *People v. Santiago*, 409 Ill. App. 3d 927, 931 (2011) ("It is fundamental that if no error

---

[1]We also note the record reflects that the specific testimony which was arguably least incriminating–Blackney's height and weight relative to the victim–was included in the testimony of other witnesses at trial. To the extent that Blackney's testimony on these issues was cumulative of other testimony, any possible error in finding Blackney unavailable as a witness was harmless. *People v. Caffey*, 205 Ill. 2d 52, 92 (2001).

occurred there can be no plain error."); *People v. Mercado*, 397 Ill. App. 3d 622, 634 (2009) ("Defense counsel is not required to make losing motions or objections in order to provide effective legal assistance.").

¶ 31                                    B. Adult Sentencing

¶ 32    Defendant next contends that the trial court improperly sentenced him as an adult because the trial court did not correctly weigh the relevant statutory factors contained in section 5-130 of the Juvenile Court Act of 1987 (hereinafter, the Act). 705 ILCS 405/5-130 (West 2008). The State disagrees with this assertion, and also contends that sentencing defendant as an adult was actually mandated by our supreme court's recent decision in *People v. King*, 241 Ill. 2d 374 (2011). We agree with the State that this issue is controlled by the relevant statutory language and the *King* decision, and therefore affirm the trial court's decision to sentence defendant as an adult. Moreover, even assuming *King* does not apply in this case, we find that the defendant was properly sentenced as an adult.

¶ 33                                    1. Standard of Review

¶ 34    In this case, the parties and the trial court operated under the assumption that the Act required a hearing to determine if defendant should be sentenced as an adult. Typically, a trial court's decision to sentence a juvenile as an adult pursuant to the Act is subject to review for an abuse of discretion. *People v. Vasquez*, 327 Ill. App. 3d 580, 587 (2001).

¶ 35    As noted above, however, we find that sentencing defendant as an adult was mandated by the Act. Therefore, we need not consider whether the trial court properly exercised its discretion and instead focus on the trial court's interpretation of the relevant statutory requirements. Statutory construction is a question of law subject to *de novo* review, and in construing a statutory provision:

> "Our primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. [Citation.] The best indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning. [Citation.] In determining the plain meaning of the statute, we consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it. [Citation.]" *King*, 241 Ill. 2d at 378.

¶ 36                                    2. Statutory Framework

¶ 37    Section 5-120 of the Act provides that, with certain specific exceptions, "no minor who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." 705 ILCS 405/5-120 (West 2008). Some of the recognized exceptions to this provision are included in section 5-130 of the Act, which provides in relevant part:

> "(1)(a) The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with: (i) first degree murder, (ii) aggravated criminal sexual

-8-

assault, (iii) aggravated battery with a firearm where the minor personally discharged a firearm as defined in Section 2-15.5 of the Criminal Code of 1961, (iv) armed robbery when the armed robbery was committed with a firearm, or (v) aggravated vehicular hijacking when the hijacking was committed with a firearm.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State.

(b)(i) If before trial or plea an information or indictment is filed that does not charge an offense specified in paragraph (a) of this subsection (1) the State's Attorney may proceed on any lesser charge or charges, but only in Juvenile Court under the provisions of this Article. The State's Attorney may proceed under the Criminal Code of 1961 on a lesser charge if before trial the minor defendant knowingly and with advice of counsel waives, in writing, his or her right to have the matter proceed in Juvenile Court.

(ii) If before trial or plea an information or indictment is filed that includes one or more charges specified in paragraph (a) of this subsection (1) and additional charges that are not specified in that paragraph, all of the charges arising out of the same incident shall be prosecuted under the Criminal Code of 1961.

(c)(i) If after trial or plea the minor is convicted of any offense covered by paragraph (a) of this subsection (1), then, in sentencing the minor, the court shall have available any or all dispositions prescribed for that offense under Chapter V of the Unified Code of Corrections.

(ii) If after trial or plea the court finds that the minor committed an offense not covered by paragraph (a) of this subsection (1), that finding shall not invalidate the verdict or the prosecution of the minor under the criminal laws of the State; however, unless the State requests a hearing for the purpose of sentencing the minor under Chapter V of the Unified Code of Corrections, the Court must proceed under Sections 5-705 and 5-710 of this Article. To request a hearing, the State must file a written motion within 10 days following the entry of a finding or the return of a verdict. Reasonable notice of the motion shall be given to the minor or his or her counsel. If the motion is made by the State, the court shall conduct a hearing to determine if the minor should be sentenced under Chapter V of the Unified Code of Corrections. In making its determination, the court shall consider among other matters: (a) whether there is evidence that the offense was committed in an aggressive and premeditated manner; (b) the age of the minor; (c) the previous history of the minor; (d) whether there are facilities particularly available to the Juvenile Court or the Department of Juvenile Justice for the treatment and rehabilitation of the minor; (e) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections; and (f) whether the minor possessed a deadly weapon when committing the offense. The rules of evidence shall be the same as if at trial. If after the hearing the court finds that the minor should be sentenced under Chapter V of the Unified Code of Corrections, then the court shall sentence the minor accordingly having available to it any or all dispositions so

prescribed." 705 ILCS 405/5-130 (West 2008).

¶ 38    Pursuant to this section, where a minor was at least 15 years of age at the time of the offense and is charged with first-degree murder, such "charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130(1)(a) (West 2008). Furthermore, if a minor is convicted of any offense "covered by" section 5-130(1)(a) of the Act, then that minor may be directly sentenced as an adult. 705 ILCS 405/5-130(1)(c)(i) (West 2008). However, if a minor is convicted of an offense "not covered by" section 5-130(1)(a) of the Act, then that minor must be sentenced under the Act as a juvenile unless the State timely requests a hearing to determine if the minor should be sentenced as an adult. 705 ILCS 405/5-130(1)(c)(ii) (West 2008). At such a hearing, the trial court must consider six specific statutory concerns, "among other factors," and thereafter the minor may be sentenced as either a juvenile under the Act or as an adult. *Id*.

¶ 39                                         3. The *King* Decision

¶ 40    Our supreme court recently addressed this statutory sentencing framework in *King*. *King*, 241 Ill. 2d at 376. In that case, the minor defendant was 15 years old at the time of the 2002 beating death of the victim, an incident for which the defendant was initially charged with five counts of first-degree murder. *Id*. The defendant eventually entered a negotiated plea to an additional charge of attempted murder in exchange for dismissal of the murder charges and a 15-year prison sentence. *Id.* The trial court therefore entered judgment pursuant to the plea agreement, sentenced the defendant to a 15-year prison term, and dismissed the murder charges. *Id.*

¶ 41    On appeal, the defendant argued that his sentence was void because the State never requested, and the trial court never held, a hearing pursuant to the section 5-130(c)(ii) of Act to determine whether he should actually be sentenced as an adult. *Id*. at 376-77 (citing 705 ILCS 405/5-130(1)(c)(ii) (West 2000)). The appellate court agreed with this argument, but on further appeal to our supreme court the parties filed supplemental briefs on two issues of statutory interpretation involving section 5-130 of the Act:

> "(1) whether an offense 'covered by' section 5-130(1)(a) includes only those charges 'specified in' that section or both charges 'specified in' that section and 'all other charges arising out of the same incident'; and (2) if an offense 'covered by' section 5-130(1)(a) includes both charges 'specified in' that section and 'all other charges arising out of the same incident,' whether section 5-130(1)(c)(ii) required the State to request a hearing to determine whether defendant should be sentenced as an adult or whether he was properly sentenced as an adult without a hearing pursuant to section 5-130(1)(c)(i)." *Id*. at 377.

Our supreme court ultimately held that "an offense 'covered by' section 5-130(1)(a) includes both charges 'specified in' that section and 'all other charges arising out of the same incident,' that section 5-130(1)(c)(ii) did not require the State to request a hearing to determine whether [the] defendant should be sentenced as an adult, and that he was properly sentenced as an adult without a hearing pursuant to section 5-130(1)(c)(i)." *Id*. at 378.

¶ 42                    4. Application of the *King* Decision to This Case

¶ 43        Here, there is no question that defendant was properly "prosecuted under the criminal laws of this State" because he was at least 15 years of age at the time of the offense and was charged with first-degree murder. 705 ILCS 405/5-130(1)(a) (West 2008). However, defendant was ultimately convicted of second-degree murder. Below, the parties and the trial court assumed that a hearing was therefore required to determine if defendant should be sentenced as a adult. To determine whether defendant was even entitled to a hearing on the question of the proper sentencing regime, however, it must first be determined whether his conviction for second-degree murder was nevertheless a conviction for an offense "covered by" section 5-130(1)(a) of the Act. 705 ILCS 405/5-130(1)(c)(i) (West 2008). If it was, then defendant should have been directly sentenced as an adult and was not entitled to a hearing on that issue. *Id*.

¶ 44        Indeed, in *King*, our supreme court made it clear that "[o]ffenses 'covered by' section 5-130(1)(a) include those 'specified in' that section as well as those arising out of the same incident." *Id*. at 386. Obviously, the original first-degree murder charges for which defendant was tried were "covered by" section 5-130(1)(a) of the Act, as that section explicitly includes the charge of first-degree murder. While defendant was convicted of second-degree murder and although that charge is not specifically listed in section 5-130(1)(a) of the Act, we find that this offense was also "covered by" that section because it arose out of the same incident as the first-degree murder charges.

¶ 45        Section 9-2 of the Criminal Code provides:

> "(a) A person commits the offense of second degree murder when he commits the offense of first degree murder as defined in paragraphs (1) or (2) of subsection (a) of Section 9-1 of this Code and either of the following mitigating factors are present:
>
>> (1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed; or
>>
>> (2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.
>
> (b) Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.
>
> (c) When a defendant is on trial for first degree murder and evidence of either of the mitigating factors defined in subsection (a) of this Section has been presented, the burden of proof is on the defendant to prove either mitigating factor by a preponderance of the evidence before the defendant can be found guilty of second degree murder. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing under the principles stated in Article 7 of this Code." 720 ILCS 5/9-2 (West 2008).

¶ 46 The circumstances "that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code" referred to in section 9-2(a)(2) include the notion that:

> "(a) A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1(a) (West 2008).

¶ 47 As our supreme court has explained, "second degree murder is not a lesser included offense of first degree murder. Rather, second degree murder is more accurately described as a *lesser mitigated offense* of first degree murder." (Emphasis in original.) *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995). In *Jeffries*, the court further explained that "second degree murder is a lesser offense because its penalties upon conviction are lesser, and it is a mitigated offense because it is first degree murder plus defendant's proof by a preponderance of the evidence that a mitigating factor is present." (Emphasis omitted.) *Id*. (citing *People v. Newbern*, 219 Ill. App. 3d 333 (1991)).

¶ 48 Here, defendant was charged and tried for first-degree murder but was convicted of second-degree murder. The trial court necessarily found that the State proved all of the elements of first-degree murder beyond a reasonable doubt, and defendant was convicted of second-degree murder because the trial court additionally found that the preponderance of the evidence established that defendant had an unreasonable belief that his actions were justified by the need to defend Blackney from the victim. Because both the offense for which defendant was charged and the offense for which he was convicted arose out of the exact same incident, we find that defendant was convicted of an offense "covered by" section 5-130(1)(a) of the Act and should have been directly sentenced as an adult pursuant to section 5-130(1)(c)(i) of the Act. 705 ILCS 405/5-130(1)(c)(i) (West 2008). Defendant was therefore not entitled to a hearing on this issue, and any possible error committed by the trial court at the hearing actually held in this case is irrelevant.

¶ 49 Our ruling necessarily rejects defendant's attempts to distinguish the *King* decision. Defendant first attempts to distinguish *King* by asserting that it "only applies to guilty pleas" and noting that the defendant in that case still faced first-degree murder charges when he pled guilty and was sentenced for attempted murder. While those were certainly the factual circumstances of the *King* decision, we reject the contention that our supreme court's ruling was limited to such circumstances. In *King*, our court interpreted the "covered by" language contained in section 5-130(1)(c)(i) of the Act. *King*, 241 Ill. 2d at 385-86. That section specifically indicates that it applies both "after trial or plea" (705 ILCS 405/5-130(1)(c)(i) (West 2008)), and there is no indication in either the statute or in the *King* decision that the "covered by" language should apply differently in either circumstance. Moreover, the first-degree murder charges in this case were clearly still pending at the time defendant was convicted of second-degree murder.

¶ 50    Defendant next asserts that *King* does not apply because, while in that case the defendant was formally charged with both first-degree and attempted murder, here defendant was never formally charged with second-degree murder. *King*, 241 Ill. 2d at 376. Defendant contends that: (1) his conviction for that offense could therefore not amount to a conviction for a "charge" arising out of the same incident for which he was charged with first-degree murder under section 5-130(1)(a) of the Act; (2) he was therefore not convicted of an offense "covered by" section 5-130(1)(a); and (3) this case thus falls outside of the rule established in *King*. We disagree.

¶ 51    First, as noted above our supreme court specifically ruled that, for purposes of section 5-130(1)(c)(i) of the Act, "[*o*]*ffenses* 'covered by' section 5-130(1)(a) include those 'specified in' that section as well as those arising out of the same incident." (Emphasis added.) *Id*. at 386. The court did not limit this holding to only *charges* arising out of the same incident. Moreover, as we also explained above, second-degree murder is nothing but a lesser mitigated offense of first-degree murder. *Jeffries*, 164 Ill. 2d at 122. Thus, the State did not have to separately charge defendant with second-degree murder in order to obtain a conviction for that offense, as the relevant statute itself indicates that it was *defendant's* duty to prove the mitigating factors that would reduce what would otherwise have been a conviction for first-degree murder to one for second-degree murder. 720 ILCS 5/9-2(c) (West 2008). Thus, defendant was both charged with an offense (first-degree murder) "covered by" section 5-130(1)(a) and convicted of a lesser mitigated version of that same charged offense (second-degree murder), section 5-130(1)(c)(i) of the Act applied, and he was properly sentenced as an adult.

¶ 52                                5. No Abuse of Discretion

¶ 53    Even if we did not find that the *King* decision controlled in this matter, we would still find that the trial court properly sentenced defendant as an adult following a hearing on the matter.

¶ 54    As noted above, the trial court was required to make this determination only after consideration of a number of statutory factors, including: "(a) whether there is evidence that the offense was committed in an aggressive and premeditated manner; (b) the age of the minor; (c) the previous history of the minor; (d) whether there are facilities particularly available to the Juvenile Court or the Department of Juvenile Justice for the treatment and rehabilitation of the minor; (e) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections; and (f) whether the minor possessed a deadly weapon when committing the offense." 705 ILCS 405/5-130(1)(c)(ii) (West 2008). "However, no one factor is determinative nor must each factor be given equal weight. [Citation.] Not all of the statutory criteria must be resolved against the minor to justify treating him as an adult. [Citation.] 'Where the record shows that the [trial] court considered all the factors and its determination is not an abuse of discretion, then the ruling will be affirmed on appeal.' [Citation.]" *Vasquez*, 327 Ill. App. 3d at 586-87.

¶ 55    Here, the record establishes that, at the hearing on this issue, the trial court first considered the nature of defendant's offense, noting its "serious nature" and that the victim

had been "shot in the back of the head." Referencing the juvenile social investigation and presentence reports that had been prepared, the trial court also noted that the social investigation report specifically indicated that "most juvenile services are not going to be available" to defendant due to the fact that he was now an adult and had earned his GED.[2] The trial court then found that merely entering an adjudication of delinquency would not "be in the best interest of [defendant] and of society." More specifically, the court noted that juvenile jurisdiction over defendant would end in just a few years when he turned 21, and that such a result "would not meet the seriousness of this matter. It would neither be just nor acceptable." Finally, the trial court also noted that the defendant committed his offense with a deadly weapon, *i.e.*, a gun. While the trial court did not specifically mention defendant's criminal history, at the hearing the State conceded at the hearing that defendant's criminal history was not significant.

¶ 56    The record is therefore clear that the trial court properly considered the relevant statutory factors in reaching its conclusion to sentence defendant as an adult. Moreover, our review of the record establishes that the trial court's decision was supported by the evidence presented at the trial and at the hearing. While each statutory factor may not conclusively weigh in favor of an adult sentence in this case, that is not required. *Vasquez*, 327 Ill. App. 3d at 586-87. On the record before us, we cannot say that the trial court abused its discretion in determining that defendant should be sentenced as an adult.

¶ 57                              C. Sentencing

¶ 58    Finally, we consider defendant's argument that his 18-year sentence was excessive and reflects the trial court's failure to give adequate weight to his rehabilitative potential.

¶ 59                          1. Standard of Review

¶ 60    When a defendant challenges his sentence on appeal, we generally defer to the trial court's judgment because it had the opportunity to observe the proceedings and is, therefore, in a better position than a reviewing court. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will not substitute our judgment for that of the trial court merely because we would have weighed the sentencing factors differently. *Stacey*, 193 Ill. 2d at 209. Accordingly, we review the trial court's sentencing determination against an abuse of discretion standard and will reverse a sentence within the prescribed statutory limits only if it varies with "the spirit and purpose of the law" or is "manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 209-10.

---

[2]On, appeal defendant asserts, for the first time, that the social investigation report was improper hearsay and should not have been considered by the trial court. However, even if we agreed with this assertion, the record reflects that defendant raised no hearsay objection below. "It is well established that when hearsay evidence is admitted without an objection, it is to be considered and given its natural and probative effect." *People v. Banks*, 378 Ill. App. 3d 856, 861 (2007).

¶ 61                                2. 18-Year Sentence

¶ 62    Here, defendant was sentenced for his conviction of second-degree murder. This offense is a Class 1 felony, with a possible sentencing range of 4 to 20 years' imprisonment. 720 ILCS 5/9-2 (West 2008); 730 ILCS 5/5-4.5-30(a) (West 2008).

¶ 63    On appeal, defendant notes the evidence in mitigation presented at his sentencing hearing established he was only 16 years old at the time of the incident and had no prior history of violence, drug use, or criminal activity. Defendant's mother was killed when he was a young child, his father abused drugs, and the Department of Children and Family Services provided services during his childhood on two occasions due to neglect. While incarcerated, defendant had earned a GED and had received a number of citations for his educational achievement and a scholarship. Finally, defendant also highlights the fact that he expressed remorse for his actions at the sentencing hearing. However, we note that in aggravation the trial court was presented with several victim impact statements from the victim's family and friends, as well as evidence that the victim was survived by two children. Defendant also had very poor grades in school, a very poor attendance record, and a history of significant disciplinary problems.

¶ 64    A trial court may consider a number of factors to fashion an appropriate sentence, including the nature of the crime, protection of the public, deterrence, punishment, and defendant's youth, rehabilitative prospects, credibility, demeanor, and character. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight attributed to each factor in aggravation or mitigation in sentencing depends on the particular circumstances of each case. *Kolzow*, 301 Ill. App. 3d at 8.

¶ 65    The trial court below specifically explained it considered and balanced all the relevant factors in aggravation and mitigation, specifically noting the nature of defendant's actions, his lack of credibility at trial, the victim impact statements, the evidence contained in the presentence report, defendant's difficult family history, and his age. In the end, the trial court balanced the evidence in mitigation and aggravation and sentenced defendant to an 18-year sentence that was within the range of possible Class 1 prison terms. In light of the record, we reject defendant's assertion that the trial court did not properly consider his age or weigh his rehabilitative potential and find no abuse of discretion in the sentence imposed. See *People v. Prince*, 362 Ill. App. 3d 762, 778 (2005) (the trial court need not accord greater weight to the potential for rehabilitation than to other sentencing factors).


¶ 66                                III. CONCLUSION

¶ 67    For the foregoing reasons, the judgment of the circuit court is affirmed.


¶ 68    Affirmed.


¶ 69    JUSTICE HALL, dissenting in part:

¶ 70    I respectfully dissent from that part of the majority's opinion which holds that sentencing the defendant as an adult, without holding a prior hearing to determine whether he should be

sentenced as a juvenile under section 5-130(1)(c)(ii) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-130(1)(c)(ii) (West 2000)), was mandated by our supreme court's decision in *People v. King*, 241 Ill. 2d 374, 378, 948 N.E.2d 1035 (2011). Resolution of this issue involves statutory interpretation, which is a matter of law subject to *de novo* review. *King*, 241 Ill. 2d at 378.

¶ 71     When interpreting a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *People v. Zimmerman*, 239 Ill. 2d 491, 497, 942 N.E.2d 1228 (2010). The most reliable indicator of the legislature's intent is the language used in the statute, which must be given its plain and ordinary meaning. In construing a statute, we presume that the legislature did not intend an absurd or unjust result. *Zimmerman*, 239 Ill. 2d at 497.

¶ 72     Section 5-130(1)(a) of the Act lists the following offenses which, if allegedly committed by a minor who was at least 15 years old at the time of the crime, must be prosecuted in criminal court: (1) first-degree murder; (2) aggravated criminal sexual assault; (3) aggravated battery with a firearm where the minor personally discharged the firearm; (4) armed robbery when the armed robbery was committed with a firearm; or (5) aggravated vehicle hijacking when the hijacking was committed with a firearm. 705 ILCS 405/5-130(1)(a) (West 2000). "These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130(1)(a) (West 2000).

¶ 73     Because the defendant was charged with first-degree murder, he was properly prosecuted under the criminal law. However, the trial court subsequently found the defendant guilty of second-degree murder, an offense not "covered by" section 5-130(1)(a) of the Act.

¶ 74     Section 5-130(1)(c)(ii) of the Act dictates the manner in which a minor should be sentenced following conviction for an offense not "covered by" section 5-130(1)(a). Under section 5-130(1)(c)(ii), if a minor is convicted of an offense not covered by section 5-130(1)(a), the trial court must proceed under the sentencing provisions of the Act and may not sentence the minor as an adult unless the State files a written motion requesting a hearing to determine whether the minor should be sentenced as an adult. The written motion requesting such a hearing must be filed within 10 days following the entry of a finding or the return of a verdict and the State must give reasonable notice of the motion to the minor or to the minor's counsel. 705 ILCS 405/5-130(1)(c)(ii) (West 2000).[3]

¶ 75     At the hearing, the trial court must consider, among other things: (a) whether there is evidence that the offense was committed in an aggressive and premeditated manner; (b) the age of the minor; (c) the previous history of the minor; (d) whether there are facilities

---

[3]"If after trial or plea the court finds that the minor committed an offense *not covered by* paragraph (a) of this subsection (1), that finding shall not invalidate the verdict or the prosecution of the minor under the criminal laws of the State; however, unless the State requests a hearing for the purpose of sentencing the minor under Chapter V of the Unified Code of Corrections, the Court must proceed under Sections 5-705 and 5-710 of this Article. To request a hearing, the State must file a written motion within 10 days following the entry of a finding or the return of a verdict. Reasonable notice of the motion shall be given to the minor or his or her counsel." (Emphasis added.) 705 ILCS 405/5-130(1)(c)(ii) (West 2000).

particularly available to the juvenile court or the Department of Juvenile Justice for the treatment and rehabilitation of the minor; (e) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections; and (f) whether the minor possessed a deadly weapon when committing the offense. 705 ILCS 405/5-130(1)(c)(ii) (West 2000).

¶ 76       Section 5-130(1)(c)(ii) is a mandatory provision and the failure to comply with its terms requires that the minor be sentenced as a juvenile. *People v. Jardon*, 393 Ill. App. 3d 725, 740, 913 N.E.2d 171 (2009); *People v. Champ*, 329 Ill. App. 3d 127, 133, 768 N.E.2d 237 (2002).

¶ 77       In this case, the State filed a timely written motion requesting a hearing to determine whether the defendant should be sentenced as an adult and the trial court conducted a hearing on the matter. The defendant now argues on appeal that the trial court improperly sentenced him as an adult because the court failed to correctly weigh the statutory factors set forth in section 5-130(1)(c)(ii) of the Act.

¶ 78       The majority maintains that the trial court properly weighed the statutory factors contained in section 5-130(1)(c)(ii) of the Act in reaching its decision to sentence the defendant as an adult. I agree with the majority on this point.

¶ 79       However, I respectfully dissent from that part of the majority opinion which holds that sentencing the defendant as an adult was mandated by the decision in *People v. King*, 241 Ill. 2d 374 (2011). The majority contends that pursuant to our supreme court's interpretation of section 5-130(1)(c)(i) of the Act[4] in *King*, the defendant should have been directly sentenced as an adult without a hearing to determine the propriety of that decision, because the offense for which the defendant was convicted (second-degree murder) arose out of the same incident that gave rise to the charge of first-degree murder and therefore the second-degree murder is an offense "covered by" section 5-130(1)(a) of the Act. I disagree.

¶ 80       As mentioned, section 5-130(1)(a) of the Act specifically lists several offenses, including first-degree murder, and states: "[t]hese charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130(1)(a) (West 2000). The framework of the Act turns on the offenses in the charging instrument. *King*, 241 Ill. 2d at 385. "Thus, it is the charging instrument that determines whether the minor has the right to have the proceedings in juvenile court." *King*, 241 Ill. 2d at 386.

¶ 81       The defendant was charged in the indictment with first-degree murder. Following a bench trial, he was convicted of second-degree murder, a lesser mitigated offense of first-degree murder (*People v. Parker*, 223 Ill. 2d 494, 506, 861 N.E.2d 936 (2006)). Second-degree murder is not an offense that is either listed, specified, or covered by section 5-130(1)(a) of the Act and the defendant was never charged with second-degree murder. Therefore, the offense of second-degree murder did not qualify as an "other charge" arising out of the same incident that gave rise to the charge of first-degree murder.

---

[4]Section 5-130(1)(c)(i) of the Act dictates the manner in which a minor should be sentenced following conviction for an offense that is "covered by" section 5-130(1)(a). 705 ILCS 405/5-130(1)(c)(i) (West 2000).