# Illinois Official Reports

## Supreme Court

---

### *People v. Fort*, 2017 IL 118966

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CAMERON FORT, Appellant. |
| Docket No. | 118966 |
| Filed | February 17, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Vincent Gaughan, Judge, presiding. |
| Judgment | Judgments reversed; cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Heidi Linn Lambros, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Annette Collins, and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People. |
| | Maya Szilak, of Chicago, for *amici curiae* Persons Concerned With the Fair Sentencing of Minors–The John Howard Association of Illinois *et al.* |

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Freeman, Garman, and Theis concurred in the judgment and opinion.

Chief Justice Karmeier dissented, with opinion, joined by Justices Thomas and Kilbride.

**OPINION**

¶ 1    At issue in this appeal is whether a minor who is tried in adult court under the "automatic transfer" provision of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-130 (West 2008)) but is later not convicted of the charges which brought him into adult court is subject to mandatory adult sentencing under the Act. Defendant, age 16, was charged with multiple counts of first degree murder and tried in adult court but was convicted only of the uncharged offense of second degree murder. See 720 ILCS 5/9-2(a)(2) (West 2008). The circuit court of Cook County sentenced defendant as an adult to 18 years in prison. We hold that the trial court erred in automatically sentencing defendant as an adult pursuant to section 5-130(1)(c)(i) of the Act because second degree murder was not a "charge[ ] arising out of the same incident" as the first degree murder charges. 705 ILCS 405/5-130(1)(a), (1)(c)(i) (West 2008).

¶ 2                              BACKGROUND

¶ 3    Defendant, Cameron Fort, was indicted and charged by a grand jury with 57 counts of first degree murder, 9 counts of attempted first degree murder, and 3 counts of aggravated discharge of a firearm in connection with the shooting death of Lee Ivory Miller on March 16, 2009. Defendant was 16 years old at the time of the incident.

¶ 4    The State proceeded to trial on four counts of first degree murder and dismissed the remaining charges. Because defendant was charged with first degree murder, an offense specified in section 5-130 of the Act (705 ILCS 405/5-130(1)(a) (West 2008)), also known as the "automatic transfer" statute, defendant was tried as an adult. 705 ILCS 405/5-130(1)(b)(ii) (West 2008).

¶ 5    Defendant elected a bench trial. A detailed recitation of the trial evidence is contained in the appellate court's order. 2014 IL App (1st) 113315-U. We briefly summarize the facts here, bearing in mind that the issue presented in this appeal is one of law.

¶ 6    At trial, Keva Donaldson testified that on March 16, 2009, she met a group of friends after school at the intersection of East 64th Street and South Stony Island Avenue. Donaldson and her friends attended Hyde Park Academy. While Donaldson was talking to another girl, a boy named "Bolo" began speaking to her and tapping her on the back. When Donaldson told him to stop, Bolo hit her with a closed fist, leaving a mark on her face from his ring. Bolo and his friends, including defendant, then ran away. Donaldson borrowed a cell phone and called a male friend to ask him to confront Bolo. Airreon Sykes, Elijah Sullivan, Gerome Freeman, Lamont Nichols, and Miller eventually arrived. Sometime later, Donaldson said, she went into a convenience store. When she left the store, Sykes and another boy told her that defendant had shot Miller a block away.

¶ 7    Freeman testified that on March 16, 2009, he arrived at a location near 1516 East 65th Place and began walking with Sykes, Sullivan, Nichols, Miller, and other individuals. Freeman said he separated from the group and crossed the street to talk to a group of girls, then crossed back to rejoin his friends who were standing near a vacant lot. Freeman testified that his friends had surprised looks on their faces. He then saw defendant nearby pointing a gun at the group. He said defendant hesitated for about 30 seconds and then began shooting. Freeman heard two or three shots fired as he ran away but did not see defendant fire the gun. Freeman denied that he or his friends had any guns or other weapons, but he testified that he thought Miller was holding a stick in his hand.

¶ 8    Sykes testified that he was with Sullivan, Freeman, Nichols, Donaldson, and Miller on the afternoon of March 16, 2009, at the corner of East 65th Street and Stony Island Avenue. Sykes knew defendant from school and testified that defendant had been involved in a fight a week or two before the shooting. Sykes saw defendant walking toward him and his group of friends. Defendant then crossed the street and walked away from the group. Sykes testified that they lost sight of defendant. A while later, Sykes and his friends split into two groups and began to search the area for defendant. After they reached a vacant lot, they saw that defendant was standing nearby but facing away from them. Defendant turned around and appeared surprised to see them. Sykes saw defendant pull a gun out of his pocket and point it at the group. After five to ten seconds, defendant began shooting. Sykes testified that no one in the group had any weapons, sticks, or poles.

¶ 9    The parties stipulated that during an autopsy, three bullet entrance wounds were found on Miller's body—on his right shoulder, his upper left back, and his left buttock—and two bullets were recovered from his body. Those bullets were later tested and determined to have been fired from the same firearm.

¶ 10    The State then introduced a video recording of defendant's interrogation by a detective and assistant State's Attorney on January 9, 2010, one day after his arrest. In the video, defendant stated that he found a gun in an alley on March 14, 2009, and he intended to return it to that location. Defendant said that on March 16, 2009, he saw Nichols at a bus stop near East 65th Street and Stony Island Avenue. When Nichols approached defendant with his hand in his pocket, defendant crossed the street to avoid him. Defendant said he had heard that Nichols had threatened others with guns. Nichols continued to follow him as he walked down the street. Defendant stated that he was panicking and thought he was going to die because he was "eighty percent sure" that Nichols was holding a gun.

¶ 11    Defendant stated in the video that he pulled out a gun from his sweatshirt pocket before he reached the vacant lot. He saw Sykes and Miller standing about 10 feet away. Defendant stated that Sykes was holding a thick metal pole. He could not tell whether Miller had anything in his hands. Defendant stated that he jumped, which caused the gun to discharge accidentally. Defendant said he fired a second shot three seconds later because his ears were ringing and he thought he heard Nichols shooting at him. He stated that he just wanted to scare them so that they would leave him alone. He denied aiming at anyone and denied firing a third shot.

¶ 12    The State rested its case. Defendant did not present any evidence. Following closing arguments, the trial court found defendant not guilty of two counts of murder and merged the remaining two counts. The court found that the State had proved the elements of first degree murder but also found that "at the time of the killing [defendant] believed the circumstances to

be such that if they existed would have justified or exonerated the killing under the said principles of self-defense, but his belief was unreasonable." Accordingly, the trial court reduced the offense of first degree murder to second degree murder based on the mitigating factor of an unreasonable belief in self-defense. The court entered judgment on a conviction of second degree murder (720 ILCS 5/9-2(a)(2) (West 2008)).

¶ 13　Although defendant was a minor, the State never filed a written motion requesting that defendant be sentenced as an adult pursuant to section 5-130(1)(c)(ii) of the Act (705 ILCS 405/5-130(1)(c)(ii) (West 2008)). Nor did defendant object or argue at the time of sentencing that he should have been sentenced as a juvenile. Instead, the trial court and the parties proceeded directly to a sentencing hearing under the Unified Code of Corrections (730 ILCS 5/1-1-1 *et seq.* (West 2008)) pursuant to section 5-130(1)(c)(i) of the Act. Following the sentencing hearing, defendant was sentenced to 18 years' imprisonment in the Illinois Department of Corrections with two years of mandatory supervised release. Defendant filed a motion to reconsider sentence arguing that his sentence was excessive. The trial court denied the motion.

¶ 14　On appeal, defendant argued, *inter alia*, that his adult sentence should be reversed because he was convicted of second degree murder, a non-automatic transfer offense and, thus, he should have been sentenced as a juvenile under section 5-130(1)(c)(ii). The appellate court rejected this argument and affirmed defendant's conviction and sentence. 2014 IL App (1st) 113315-U. The court held that a minor who is charged with first degree murder but convicted only of the uncharged offense of second degree murder is subject to mandatory adult sentencing under section 5-130(1)(c)(i) of the Act. *Id.* ¶¶ 29-33.

¶ 15　This court granted defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Jan. 1, 2015). We have permitted the John Howard Association of Illinois, along with various other groups and individuals concerned with the fair sentencing of minors, to file a brief as *amici curiae* in support of defendant. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 16　ANALYSIS
¶ 17　I. Plain Error
¶ 18　At the outset, we recognize that defendant failed to challenge the propriety of his adult sentence before the trial court. Defendant neither objected to his adult sentence at his sentencing hearing nor raised such a claim in his motion to reconsider sentence. Accordingly, this issue was forfeited and may not be considered on appeal unless it was plain error. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *People v. Bannister*, 232 Ill. 2d 52, 76 (2008) (to preserve a sentencing claim for appeal, a defendant must make a contemporaneous objection at the sentencing hearing and raise the issue in a postsentencing motion). The plain error doctrine is set forth in this court's jurisprudence as follows:

> "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. *** In the second instance, the defendant must prove

- 4 -

there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [*People v. Keene*, 169 Ill. 2d 1, 17 (1995).] Prejudice to the defendant is presumed because of the importance of the right involved, '*regardless* of the strength of the evidence.' (Emphasis in original.) [*People v. Blue*, 189 Ill. 2d 99, 138 (2000).] In both instances, the burden of persuasion remains with the defendant." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

¶ 19    If defendant is correct that the trial court was statutorily prohibited from sentencing him as an adult, this would amount to plain error pursuant to the second prong of our plain error analysis. "The imposition of an unauthorized sentence affects substantial rights" and, thus, may be considered by a reviewing court even if not properly preserved in the trial court. *People v. Hicks*, 181 Ill. 2d 541, 545 (1998) (citing *People v. Brown*, 197 Ill. App. 3d 907, 918 (1990)); see also *People v. Lewis*, 234 Ill. 2d 32, 48-49 (2009) (plain error review is appropriate to consider the imposition of a fine in contravention of the statute because it implicates a defendant's right to a fair sentencing hearing). Thus, our first task is to determine whether defendant's adult sentence was authorized under section 5-130 of the Act. 705 ILCS 405/5-130 (West 2008).

¶ 20    The issue presented in this appeal involves statutory construction, an issue of law which is subject to *de novo* review. *In re D.D.*, 196 Ill. 2d 405, 418 (2001). The cardinal rule in interpreting a statute is to give effect to the intent of the legislature. *Id.* The language of the statute is the best and most reliable indicator of the legislature's intent. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). Where the language is plain and unambiguous, we may not read into it exceptions, limitations, or other conditions. *In re D.D.*, 196 Ill. 2d at 419. However, where the statutory language is ambiguous, a reviewing court may look beyond the language and resort to further aids of statutory construction. *Id.* In addition to examining the statutory language, we may discern legislative intent by considering "the purpose and necessity for the law, the evils sought to be remedied, and goals to be achieved." *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003). " 'Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other.' " *Id.* (quoting *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990)). Throughout this process, we presume that the legislature did not intend absurdity, inconvenience, or injustice. *Id.*

¶ 21                                          II. Statutory Analysis

¶ 22    The Act, as it existed at the time of defendant's offense, provides that juvenile proceedings are properly instituted against any minor under 17 years of age who is charged with violating any federal or State law or municipal or county ordinance.[1] 705 ILCS 405/5-120 (West 2008). The Act further provides that "no minor who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." *Id.*

¶ 23    The automatic transfer provision in section 5-130 of the Act is an exception to the juvenile court's exclusive jurisdiction over minors charged with a crime. 705 ILCS 405/5-130 (West

---

[1]The current statute expands the juvenile court's jurisdiction to include all minors under 18 years of age. 705 ILCS 405/5-120 (West 2014).

2008). At the time of defendant's offense, the automatic transfer statute provided, in pertinent part:

"§ 5-130. Excluded jurisdiction.

(1)(a) The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with: (i) first degree murder, (ii) aggravated criminal sexual assault, (iii) aggravated battery with a firearm where the minor personally discharged a firearm as defined in Section 2-15.5 of the Criminal Code of 1961, (iv) armed robbery when the armed robbery was committed with a firearm, or (v) aggravated vehicular hijacking when the hijacking was committed with a firearm.

*These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State.*

(b)(i) If before trial or plea an information or indictment is filed that does not charge an offense specified in paragraph (a) of this subsection (1) the State's Attorney may proceed on any lesser charge or charges, but only in Juvenile Court under the provisions of this Article. The State's Attorney may proceed under the Criminal Code of 1961 on a lesser charge if before trial the minor defendant knowingly and with advice of counsel waives, in writing, his or her right to have the matter proceed in Juvenile Court.

(ii) If before trial or plea an information or indictment is filed that includes one or more charges specified in paragraph (a) of this subsection (1) and additional charges that are not specified in that paragraph, all of the charges arising out of the same incident shall be prosecuted under the Criminal Code of 1961.

(c)(i) If after trial or plea the minor is convicted of any offense covered by paragraph (a) of this subsection (1), then, in sentencing the minor, the court shall have available any or all dispositions prescribed for that offense under Chapter V of the Unified Code of Corrections.

(ii) *If after trial or plea the court finds that the minor committed an offense not covered by paragraph (a) of this subsection (1), that finding shall not invalidate the verdict or the prosecution of the minor under the criminal laws of the State; however, unless the State requests a hearing for the purpose of sentencing the minor under Chapter V of the Unified Code of Corrections, the Court must proceed under Sections 5-705 and 5-710 of this Article.* To request a hearing, the State must file a written motion within 10 days following the entry of a finding or the return of a verdict. Reasonable notice of the motion shall be given to the minor or his or her counsel. If the motion is made by the State, the court shall conduct a hearing to determine if the minor should be sentenced under Chapter V of the Unified Code of Corrections. In making its determination, the court shall consider among other matters: (a) whether there is evidence that the offense was committed in an aggressive and premeditated manner; (b) the age of the minor; (c) the previous history of the minor; (d) whether there are facilities particularly available to the Juvenile Court or the Department of Juvenile Justice for the treatment and rehabilitation of the minor; (e) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections; and (f) whether the minor possessed a deadly weapon when committing the offense. The

rules of evidence shall be the same as if at trial. If after the hearing the court finds that the minor should be sentenced under Chapter V of the Unified Code of Corrections, then the court shall sentence the minor accordingly having available to it any or all dispositions so prescribed." (Emphases added.) 705 ILCS 405/5-130(1) (West 2008).[2]

¶ 24　Defendant contends that his adult sentence was imposed in violation of the statute, based on the fact that he was convicted of second degree murder, an uncharged non-automatic transfer offense, and not convicted of all first degree murder charges. He argues that his conviction for second degree murder was "not covered by" section 5-130(1)(a) because second degree murder was not a "charge[ ] arising out of the same incident" as the first degree murder charges. 705 ILCS 405/5-130(1)(a), (1)(c)(i) (West 2008). Therefore, defendant argues, he should have been sentenced as a juvenile pursuant to section 5-130(1)(c)(ii) unless the State specifically requested a hearing to sentence him as an adult. 705 ILCS 405/5-130(1)(c)(ii) (West 2008). We agree.

¶ 25　In order to discern the legislative intent, it is necessary to consider the statute in its entirety without construing any part of the statute in isolation. See *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 184 (2007) ("a court determines the legislative intent in enacting a statute by examining the entire statute and by construing each material part of the legislation together, and not each part or section alone"). To that end, we will examine the ways in which the various provisions in section 5-130 work together as a whole.

¶ 26　Section 5-130(1)(a) of the statute provides that a minor who is at least 15 years old at the time of the offense and who is charged with one of the offenses listed in the statute is excluded from the juvenile court's jurisdiction. 705 ILCS 405/5-130(1)(a) (West 2008). The listed offenses include first degree murder but not second degree murder. *Id.* Section 5-130(1)(a) further provides that "[t]hese *charges* and all other *charges* arising out of the same incident shall be prosecuted under the criminal laws of this State." (Emphases added.) *Id.*

¶ 27　Section 5-130(1)(b) pertains to whether the minor is properly tried for his charged offenses in juvenile court or adult court. Defendant does not dispute that he was properly tried in adult court because he was charged with four counts of first degree murder, one of the listed offenses in section 5-130(1)(a). See 705 ILCS 405/5-130(1)(a), (1)(b)(ii) (West 2008).

¶ 28　Section 5-130(1)(c) pertains to sentencing of minors subject to the automatic transfer statute. 705 ILCS 405/5-130(1)(c) (West 2008). Section 5-130(1)(c)(i) provides that if the minor is convicted of "any offense covered by" section 5-130(1)(a), the trial court shall sentence him as an adult under chapter V of the Unified Code of Corrections. 705 ILCS 405/5-130(1)(c)(i) (West 2008). Conversely, section 5-130(1)(c)(ii) provides that if the minor is convicted of "an offense not covered by" section 5-130(1)(a), the trial court must sentence him as a juvenile unless the State files a written motion, within 10 days after the verdict or finding, requesting adult sentencing. 705 ILCS 405/5-130(1)(c)(ii) (West 2008). If the State files such a motion, the trial court must conduct a hearing, following the rules and taking into consideration the factors set forth in section 5-130(1)(c)(ii). *Id.*

---

[2]The statute has since been amended. The age upon which the automatic transfer statute becomes effective has been increased to 16, and the offenses listed in subsection 5-130(1)(a) have been modified. See 705 ILCS 405/5-130 (West Supp. 2015).

¶ 29    Thus, the statutory language clearly requires that a minor be tried in adult court if he is charged with one of the offenses listed in section 5-130(1)(a) of the statute. See 705 ILCS 405/5-130(1)(a), (1)(b)(ii) (West 2008). Moreover, a minor is properly tried in adult court on all of the charged offenses "arising out of the same incident," even if some of those charges are not listed in section 5-130(1)(a). 705 ILCS 405/5-130(1)(a) (West 2008). This procedure obviously benefits the State and the court system by avoiding separate trials in criminal court and juvenile court for the same incident. However, the same logic does not apply to sentencing when a defendant is not convicted of the charges that brought him into adult court and ultimately is convicted of a less serious, uncharged offense.

¶ 30    The plain language in section 5-130(1)(c)(ii) evinces the legislative intent that when a minor is convicted only of an uncharged, non-automatic transfer offense, the court must proceed under the Juvenile Court Act for sentencing unless the State moves for adult sentencing and that request is granted. Mandatory adult sentencing under section 5-130(1)(c)(i) only applies when a minor is convicted of an offense "covered by" section 5-130(1)(a). 705 ILCS 405/5-130(1)(c)(i) (West 2008). Section 5-130(1)(a) lists four specific charges and provides that "[t]hese charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130(1)(a) (West 2008). Thus, in order for a conviction to be "covered by" section 5-130(1)(a), it must be for a charged offense, whether one of the enumerated charges or a separate charge arising out of one of the enumerated charges. There is good reason why the legislature may have chosen to limit the reach of section 5-130(1)(c)(i) solely to charged offenses. Limiting adult sentencing in this way prevents the State from overcharging a minor defendant in order to secure an adult sentence where the evidence does not support a finding of the more serious charge. This court has recognized that the framework of the Act "turns on the offenses in the charging instrument." *People v. King*, 241 Ill. 2d 374, 385-86 (2011) (citing *People v. J.S.*, 103 Ill. 2d 395, 403 (1984)). "Thus, it is the charging instrument that determines whether the minor has the right to have the proceedings in juvenile court." *Id.*

¶ 31    In this case, defendant was charged and tried for first degree murder but was not charged with second degree murder. Second degree murder is a separate offense from first degree murder. 720 ILCS 5/9-1, 9-2 (West 2008). While "[t]he State may charge second degree murder without also charging first degree murder" (*People v. Mohr*, 228 Ill. 2d 53, 66 (2008)), here, the State chose to proceed to trial on only the first degree murder charges. Therefore, the offense of second degree murder did not qualify as an "other charge[ ] arising out of the same incident" as the charged offenses. 705 ILCS 405/5-130(1)(a) (West 2008). Under the plain language of the statute, defendant's conviction on an uncharged offense was not "covered by" section 5-130(1)(a). 705 ILCS 405/5-130(1)(a), (1)(c) (West 2008). Thus, sentencing should have proceeded under section 5-130(1)(c)(ii) rather than section 5-130(1)(c)(i). In the absence of a request by the State for adult sentencing, defendant's adult sentence is contrary to the express statutory language and must be vacated. See 705 ILCS 405/5-130(1)(c)(ii) (West 2008).

¶ 32    The State contends that defendant's sentencing posture differs from that of a minor who is charged with only a non-automatic transfer offense and is tried and sentenced in juvenile court. The State argues that defendant was not "acquitted" of first degree murder because second degree murder is considered a "lesser mitigated offense" of first degree murder. See *Mohr*, 228 Ill. 2d at 66. In convicting defendant, the trial court found that the State had proved all of the

- 8 -

necessary elements for first degree murder but the evidence supported a mitigating factor, which reduced the crime to second degree murder. According to the State, then, defendant's second degree murder conviction was "covered by" section 5-130(1)(a) because it arose out of the same incident as the proven first degree murder charge. See 705 ILCS 405/5-130(1)(a), (1)(c)(i) (West 2008).

¶ 33    The State's argument is grounded in a faulty premise, *i.e.*, that defendant was technically still "convicted" of first degree murder. We reject this argument as both factually and legally incorrect. The trial court considered the evidence presented by the State and found defendant guilty of second degree murder, a lesser, reduced form of murder. The second degree murder statute provides that the defendant has the burden of proving a mitigating factor by a preponderance of the evidence. 720 ILCS 5/9-2(c) (West 2008). The State then has the burden of proving beyond a reasonable doubt "the absence of circumstances at the time of the killing that would justify or exonerate the killing under the principles stated in Article 7 of this Code." *Id.* Because defendant was convicted of second degree murder, the State obviously failed to meet its burden of proof with respect to the absence of a mitigating factor.

¶ 34    When a defendant is charged with first degree murder but convicted of second degree murder, the State is prohibited by collateral estoppel from later retrying the defendant for first degree murder. See *People v. Newbern*, 219 Ill. App. 3d 333, 354 (1991); *People v. Thomas*, 216 Ill. App. 3d 469, 472-73 (1991); Illinois Pattern Jury Instructions, Criminal, No. 7.01S, Committee Note (4th ed. 2000). Collateral estoppel, in the criminal context, is a component of the double jeopardy clause. *People v. Blue*, 207 Ill. 2d 542, 549 (2003); *People v. Carrillo*, 164 Ill. 2d 144, 151 (1995). Accordingly, the State's claim that defendant was convicted of first degree murder is simply false.

¶ 35    Furthermore, the State's reading of the statute leads to unjust and absurd results. The process of statutory interpretation should not be divorced from consideration of real-world results, and in construing a statute, courts should presume that the legislature did not intend unjust consequences. *People v. Marshall*, 242 Ill. 2d 285, 293 (2011); *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110 (1993). To illustrate the injustice of the State's position, it is helpful to consider a scenario in which defendant is initially charged only with second degree murder. The same evidence is introduced at trial with the same verdict or finding rendered as in the instant case. In this scenario, defendant would have remained under the jurisdiction of the juvenile court, affording him access to the dispositions available to juveniles under the Act. See generally *In re Rodney H.*, 223 Ill. 2d 510, 519-20 (2006); 705 ILCS 405/1-2(1), 5-101(1) (West 2008). By contrast, in this case, the State's decision to charge defendant with first degree murder, which was ultimately rejected by the trier of fact in a final judgment on the merits, resulted in defendant's categorical exclusion from being treated as a juvenile at sentencing. This result cannot be what the legislature intended.

¶ 36    The appellate court below relied on *People v. King*, 241 Ill. 2d 374 (2011), in support of its decision to affirm defendant's criminal sentence under section 5-130(1)(c)(i). *King* is factually distinguishable and does not support the appellate court's rationale. There, the 15-year-old defendant was initially charged with five counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2000)). The State subsequently filed an additional information, which added one count of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a) (West 2000)) arising out of

the same incident. *King*, 241 Ill. 2d at 376. On the same day, the defendant entered a negotiated plea to the attempted murder charge in exchange for dismissal of the murder charges and a 15-year sentence in the Department of Corrections. The trial court entered judgment pursuant to the plea agreement, sentenced defendant to the agreed-upon 15-year prison term, and dismissed the murder charges. On appeal, defendant argued his sentence violated the Act because the State failed to request a hearing under section 5-130(1)(c)(ii) to determine whether he should be sentenced as an adult. *Id.* at 376-77. The appellate court agreed and reversed the trial court's judgment. *People v. King*, 395 Ill. App. 3d 985 (2009).

¶ 37    On appeal to this court, we reversed, holding that defendant was properly sentenced as an adult pursuant to section 5-130(1)(c)(i). *King*, 241 Ill. 2d at 378. We held that a conviction for an offense " 'covered by' " section 5-130(1)(a), as set forth in section 5-130(1)(c)(i), includes both charges " 'specified in' " section 5-130(1)(a), as well as " 'all other charges arising out of the same incident.' " *Id.* at 385. Thus, the attempted first degree murder charge was " 'covered by' " section 5-130(1)(a) because it arose out of the same incident as the first degree murder charges. *Id.* at 386.

¶ 38    The facts in the case at bar do not resemble those in *King*. The defendant in *King* pled guilty to and was convicted of the charged offense of attempted first degree murder, and his first degree murder charges were not dismissed until after defendant's sentencing. *Id.* Unlike King, who was actually charged with attempted first degree murder, defendant was never charged with second degree murder. Thus, in this case, second degree murder is not a "charge[ ] arising out of the same incident" as the first degree murder charges. See 705 ILCS 405/5-130(1)(a) (West 2008). Moreover, in *King*, the parties specifically negotiated the guilty plea procedure with the intent that the minor receive an adult sentence. A negotiated guilty plea involves different concerns than those in defendant's case. See *People v. Whitfield*, 217 Ill. 2d 177, 190 (2005) (when a defendant enters a negotiated guilty plea in exchange for specific benefits, both the State and the defendant must be bound by the terms of the agreement). Accordingly, *King* is factually distinguishable and does not support the result reached by the appellate court in the instant case.

¶ 39    The State contends that, even if it was error for the trial court to impose an adult sentence in this case, it was not "clear" or "obvious" error requiring this court's review. See *In re M.W.*, 232 Ill. 2d 408, 431 (2009) ("the term 'plain' as used in the plain-error rule is synonymous with 'clear' or 'obvious'; error is not plain if the law was 'unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified' " (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). The State's point is not well taken. At the time of defendant's sentencing, *King* had been decided, but no appellate court had interpreted that decision to apply to circumstances like those in the present case, where defendant was convicted of an uncharged, non-automatic transfer offense. After defendant was convicted of second degree murder, an offense "not covered by" section 5-130(1)(a) of the Act, the trial court proceeded to sentence defendant as an adult pursuant to section 5-130(1)(c)(i). This was clear and obvious error because it directly violated the express language in the statute.[3]

---

[3]Subsequent to defendant's sentencing, the appellate court in *People v. Toney*, 2011 IL App (1st) 090933, ¶¶ 48-51, applied *King* to circumstances in which a minor was charged and tried for first

¶ 41 Having determined that the trial court erred in imposing an adult sentence in violation of the statute and that this error was so serious that it affected the fairness of defendant's sentence and challenged the integrity of the judicial process (*People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)), we must decide the appropriate remedy.[4] The record demonstrates that, immediately following the verdict, the trial court ordered a presentence investigation and scheduled a date for sentencing. The sentencing hearing took place 49 days after the verdict. The trial court considered evidence in aggravation and mitigation and proceeded to sentence defendant as an adult to 18 years in prison. At no time after the guilty finding did the trial court suggest to the parties that defendant was subject to juvenile sentencing. The State thus had no reason to request a hearing for the purpose of sentencing defendant under the Unified Code of Corrections. Accordingly, we find that the proper resolution is to remand the cause to the trial court with directions to vacate defendant's sentence and allow the State to file a petition requesting a hearing for adult sentencing pursuant to section 5-130(1)(c)(ii). Should the trial court find after the hearing that defendant is not subject to adult sentencing, the proper remedy is to discharge the proceedings against defendant since he is now over 21 years of age and is no longer eligible to be committed as a juvenile under the Act. See 705 ILCS 405/5-755(1) (West 2008) (a defendant's commitment under the Act terminates automatically upon his or her twenty-first birthday); *In re Jaime P.*, 223 Ill. 2d 526, 539-40 (2006).

¶ 42                                              CONCLUSION

¶ 43 For the foregoing reasons, the judgments of the lower courts are reversed. The cause is remanded to the trial court with directions to vacate defendant's sentence and allow the State to file a petition requesting a hearing pursuant to section 5-130(1)(c)(ii) of the Juvenile Court Act. 705 ILCS 405/5-130(1)(c)(ii) (West 2008). In accord with the timeline provided in the statute, the State must file its motion within 10 days of the date the trial court vacates defendant's sentence.

¶ 44 Judgments reversed; cause remanded with directions.

¶ 45 CHIEF JUSTICE KARMEIER, dissenting:

¶ 46 My colleagues reverse and remand for a new sentencing hearing on the grounds that the crime for which defendant was ultimately convicted—second degree murder—was not a " 'charge[ ] arising out of the same incident' " as the first degree murder charges which warranted his prosecution under the Criminal Code of 1961 pursuant to section 5-130 of the Juvenile Court Act of 1987. *Supra* ¶ 1 (quoting 705 ILCS 405/5-130(1)(a) (West 2008)). That is incorrect as a matter of law. Second degree murder is not a separate crime from first degree murder. It is not an "alternative to first degree murder." *People v. Parker*, 223 Ill. 2d 494, 506

---

degree murder but convicted only of the uncharged offense of second degree murder. *Toney* is hereby overruled.

[4]Defendant argues in the alternative that his attorney was ineffective for failing to object to the automatic imposition of his adult sentence. We need not reach this issue given our decision to review the statutory violation under principles of plain error.

(2006). It is not a lesser-included offense of first degree murder.[5] Rather, it is a *mitigated* form of the *same* crime. *People v. Wilmington*, 2013 IL 112938, ¶ 48 (citing *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995), and *People v. Toney*, 2011 IL App (1st) 090933, ¶ 47); *People v. Staake*, 2016 IL App (4th) 140638, ¶ 69. Correspondingly, a charge of second degree murder is incorporated into every charge of first degree murder. The elements of the two offenses are the same. The only thing that distinguishes them is that for a defendant to be convicted of second degree murder, he or she must have met the burden of establishing a mitigating factor after the State has proven the charge of first degree murder beyond a reasonable doubt.[6] *Jeffries*, 164 Ill. 2d at 118 ("A first degree murder *charge will be reduced* to second degree murder *only* where the State has proven the elements of first degree murder *and* the defendant has established a mitigating factor by a preponderance of the evidence." (Emphases added and in original.)).

¶ 47    Because second degree murder is merely a variant of first degree murder and not a separate offense, Illinois law does not require, and did not require in this case, that it be charged separately. By charging first degree murder, the State was simultaneously charging defendant with second degree murder. Because the charge of first degree murder was sufficient to trigger the automatic transfer provision of section 5-130 and because the charge for which defendant was ultimately found guilty—second degree murder—was merely a variant of that same qualifying offense and not a different or lesser-included offense, it therefore cannot be said that the defendant here was convicted of an offense for which he had not been charged. To the contrary, he quite clearly was. Defendant was found guilty of second degree murder, and the State had leveled a charge of second degree murder against him when it charged him with first degree murder. The trial court was therefore entirely correct when it sentenced defendant as an adult.

¶ 48    The majority attempts to avoid this conclusion by pointing to authority that permits the State to charge second degree murder without also charging first degree murder. I do not question that authority. It does not, however, support the majority's conclusions. To say that a charge *may* be filed separately, which is what our case law holds (*People v. Mohr*, 228 Ill. 2d 53, 66 (2008)), is quite different than holding that the charge *must* be filed separately to avoid the issue presented in this case. These are entirely different matters. That the State has the option of proceeding directly under second degree murder in no way alters the principle that second degree murder is merely a mitigated form of first degree murder and that a charge of

---

[5]To convict a defendant of a lesser-included offense, " 'the evidence must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater.' " *People v. Wilmington*, 2013 IL 112938, ¶ 47 (quoting *People v. Medina*, 221 Ill. 2d 394, 410 (2006)). That is *not* the case with second degree murder. Defendant must be found to have committed first degree murder, as charged.

[6]The majority holds that the "trial court found that the State had proved all of the necessary elements for first degree murder but the evidence supported a mitigating factor, which reduced the crime to second degree murder." *Supra* ¶ 32. The majority then contradicts this statement by opining that the defendant's first degree murder charge was "ultimately rejected by the trier of fact." *Supra* ¶ 35. This is incorrect. The first degree murder charge was not rejected; rather, the trier of fact found that the State successfully proved the charge of first degree murder but also found that defendant proved the existence of a mitigating factor.

second degree murder is present whenever a charge of first degree murder is leveled against a defendant. No Illinois authority holds to the contrary. By charging second degree murder alone, the State is merely "alleg[ing] that it can prove the elements of first degree murder, but conced[ing] that mitigating factors are present." *Id.*

¶ 49 Under the majority's view, in order to avoid the issue here, the State would have been required to expressly and simultaneously charge first degree murder and second degree murder. Such a charging strategy, however, would be self-defeating. By charging defendant with second degree murder, the State would be conceding the presence of a mitigating factor and effectively admitting that it could not obtain a conviction for first degree murder.[7]

¶ 50 As this court's statement in *Jeffries* suggests, a charge of first degree murder will be reduced to a subsumed charge of second degree murder, and a resultant second degree murder conviction, where a defendant has proven a mitigating circumstance. *Jeffries*, 164 Ill. 2d at 118. In sum, a charge of second degree murder is incorporated in every charge of first degree murder. Defendant was thus convicted of a charged offense arising out of section 5-130 of the Act and was properly sentenced under the Unified Code of Corrections.

¶ 51 For the foregoing reasons, I respectfully dissent.

¶ 52 JUSTICES THOMAS and KILBRIDE join in this dissent.

---

[7]The majority also attempts to "illustrate the injustice of the State's position" by envisioning "a scenario in which defendant is initially charged only with second degree murder" (*supra* ¶ 35), but this invitation to participate in an unrealistic hypothetical is a nonstarter. Why, in this case, when the State had to prove defendant guilty of first degree murder in any event, would the State concede, at the outset, defendant's subjective, unreasonable belief in the need to shoot the victim? Even in defendant's self-serving version of events, *he* fired—accidentally he claimed—the first shot and then fired at least one subsequent shot, though he never actually saw the victim in possession of a weapon. Moreover, the majority apparently agrees (see *supra* ¶¶ 37-38) that conviction of any other *charged* nonspecified offense attendant to a charge for first degree murder (for example, aggravated battery, generally a Class 3 felony)—or attendant to any other charge "specified in" section 5-130(1)(a)—would, irrespective of the disposition of the "specified" offense, subject a defendant to sentencing as an adult, a result clearly contemplated by the legislature, as we held in *King*. So what, exactly, would be unjust in this situation?