NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170805-U

NO. 4-17-0805

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 9, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| MAURICE JOHN KIRKWOOD, | ) | No. 15CF1323 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

---

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Steigmann and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The circuit court performed adequate inquiries into defendant's allegations that defense counsel had rendered ineffective assistance.

(2) Any sentencing issue omitted from the postsentencing motion is forfeited, and absent a threshold showing of a clear or obvious sentencing error, there can be no plain-error analysis.

¶ 2    In October 2015, the vice squad of the Bloomington, Illinois, police department used a confidential informant, Raymond Dillingham, to buy cocaine. The controlled purchase took place in a motel room rented by Jazetta Payne. Soon afterward, the police obtained a warrant to search the room. In executing the warrant, the police arrested defendant, Maurice John Kirkwood, and found the buy money, $100 in marked currency, in his pants pocket. On two nightstands flanking a bed on which Payne was sitting, the police found a pile of cocaine, a crack pipe, and 36 Baggies of cocaine. Defendant gave a video-recorded statement to the police, in which he admitted

having procured the cocaine from a supplier in Chicago and in which he named several drug dealers in Bloomington, even offering to point them out to the police. (That plan, however, never came to fruition.) In a bench trial, the McLean County Circuit Court found defendant guilty of count I of the information, unlawful possession of a controlled substance with the intent to deliver it (720 ILCS 570/401(c)(2) (West 2014)), and count IV, unlawful delivery of a controlled substance (*id.* § 401(d)(i)). The court sentenced him to concurrent 14-year terms of imprisonment.

¶ 3        Defendant appeals on two grounds.

¶ 4        First, defendant criticizes the circuit court for "conduct[ing] no further inquiry into [defendant's] allegation that his jury waiver had been coerced by threats from [his defense attorneys] that they would not seek a continuance in his case unless he waived his right to a jury trial." See *People v. Krankel*, 102 Ill. 2d 181 (1984). As far as we can see from our review of the record, defendant made no such allegation. Rather, he alleged that on the scheduled day of the jury trial, he could not "get" a continuance unless he waived a jury trial. We do not see where defendant ever mentioned to the circuit court a refusal by defense counsel to move for a continuance. That appears to be, instead, a rather loose interpretation of what defendant said. The court discussed with defendant his explicit claims, point by point, and sought explanations from defense counsel. The *Krankel* hearings that the court held in this case were lengthy and painstaking. We conclude, *de novo*, that *Krankel* and its progeny are satisfied. See *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 5        Second, defendant argues that the concurrent 14-year prison sentences are disproportionate to the offenses and fail to reflect his potential for rehabilitation. We hold that defendant has procedurally forfeited this sentencing issue and that the doctrine of plain error does not avert the forfeiture.

¶ 6        Therefore, we affirm the judgment.

¶ 7                                    I. BACKGROUND

¶ 8              On September 8, 2016, the parties informed the circuit court that they were ready for trial.

¶ 9              On September 12, 2016, the parties appeared for a jury trial. There was a mention of plea negotiations. Defendant waived his right to a jury trial. Consequently, the case was rescheduled for a bench trial.

¶ 10             The first day of the bench trial was October 5, 2016.

¶ 11             On the second day of the bench trial, October 20, 2016, the assistant public defender, Jeff Brown, told the circuit court: "Your Honor, [defendant is] alleging ineffective assistance of counsel at this time."

¶ 12             Upon receiving that news, the circuit court had a witness for the State leave the courtroom, and the court held a *Krankel* hearing. Defendant complained to the court that Brown had neglected to come to the jail and show him the discovery materials and discuss trial strategy. Also, defendant accused Brown of threatening him:

        "Now he's going to tell me, cause me bodily harm to me if a certain video is showed and certain people on the video is on there, then I shouldn't want this played to go to trial. I mean that is threatening me. That is intimidating me on the State's behalf. Telling me I'm guilty and then telling me witnesses are here to testify against me when they are not."

¶ 13             The circuit court asked Brown if he had any response. Brown answered:
        "As far as talking to him about his case, I did so numerous times. I visited in the jail. ***

As far as—he alleged threats. I never made any physical threats. There are issues with the video of his interrogation in which he makes some statements about some other individuals. And I did ask him when I met with him as any attorney would if he is concerned about that videotape being shown at a trial, because it was my contention it would be. At no point did I ever insinuate that something nasty was going to happen with him, but that was part of talking about the evidence that was against him. So for him to say that I didn't talk about those things, yet still bring up the fact that we talked about that video, I think he's being disingenuous."

¶ 14　　The circuit court then explained to defendant that the State was still presenting its evidence and the court did not anticipate that the trial would advance far enough that day for the defense to present any evidence. There was still time for Brown to interview and subpoena witnesses in response to the State's presentation of evidence. Thus, the court was not hearing from defendant, or seeing, any possible neglect of his case. Instead, the court was hearing "conclusory comments" by defendant that Brown had been rendering ineffective assistance.

¶ 15　　The circuit court asked defendant if he had requested the public defender, Carla Barnes, to assign a different attorney to his case. Defendant answered that he had done so and that Barnes was unwilling to replace Brown. Defendant added:

"Both of them tricked me into signing a jury waiver alleging that a witness was here to see me—to testify against me. I need a continuance. In order for me to get that continuance I had to sign my rights to a jury away."

¶ 16　　The circuit court told defendant he had a choice: he could continue being represented by Brown, or he could represent himself. "But at this point in time," the court said, "I

- 4 -

don't see any neglect on the part of Brown." Defendant chose to keep Brown as his attorney. The witness was called back into the courtroom, and the bench trial resumed.

¶ 17 On the third day of the bench trial, November 29, 2016, Brown informed the circuit court that defendant wished to fire him. The court asked defendant if such was his desire. Defendant answered: "Well, first of all, that wasn't my request to counsel, to come out here and just relate to you." Instead, defendant wished to complain again of Brown's performance. The court asked defendant: "So[,] if you don't wish to fire him, then what are the issues that you wish to bring to the [c]ourt's attention related to ineffective assistance of counsel?"

¶ 18 One of the complaints that defendant made was as follows: "I've signed a jury waiver that I did not want to sign, which is illegal." The circuit court asked defendant if he had lied at the hearing in which he signed the jury waiver. Defendant answered: "No, I did not lie. I was—I told what I was told to say. So I was lying to my public defender. So I guess I probably would have told a lie—repeated a lie." The court told defendant that if he wanted to retract his waiver of a jury, he would have to file a motion requesting that relief. "[W]e're not going to address that issue now without the transcript of the proceedings," the court said. "What I'm asking you now is to provide me with as much specific detail, not conclusions, about what you believe your lawyer either did or didn't do that was ineffective."

¶ 19 The circuit court then heard defendant's complaints about Brown, one by one. The court asked questions of defendant and Brown. It does not appear that defendant had anything further to say about being coerced or tricked into signing the jury waiver. At the conclusion of this *Krankel* inquiry, the court again found no possible neglect of the case.

¶ 20 Seeing no reason to appoint substitute counsel, the circuit court asked defendant if he wished to represent himself. Defendant answered in the affirmative. After admonishing

defendant at considerable length, the court excused Brown from further representing defendant in this case. Brown handed defendant the discovery materials. The State rested, and the court asked defendant if he had any evidence to present. Defendant told the court he had changed his mind about representing himself and that he would like to "go back with the *** public defender's office, Jeff Brown." Apparently, Brown had not yet left the courtroom, or he was still within haling distance. The court reappointed Brown as defense counsel and granted a motion by Brown for a continuance so that he could speak with Dillingham, who, Brown remarked, "may be difficult to get in [t]here." The prosecutor remarked: "We've not been able to locate [Dillingham]. He's living in the state of Ohio, so I don't think we're going to be able to find him."

¶ 21 On January 18, 2017, Brown informed the circuit court that defendant had changed his mind again and that he now wished to represent himself. After admonishing defendant again pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), the court allowed defendant to proceed *pro se*. Brown handed him the defense file.

¶ 22 On January 30, 2017, instead of appearing *pro se*, defendant was now represented by a private attorney, Gary Morris. It was time for the defense to present its case in chief. The circuit court denied a motion by Morris for a continuance. The defense called LaShawn Ellis. In his direct examination of Ellis, Morris offered in evidence a video statement by Dillingham (in which, supposedly, he denied buying cocaine from defendant). Dillingham, Ellis testified, lived somewhere in Ohio—she did not know where—and had sent her this video via cell phone. The State objected to the video on the ground of hearsay. The court sustained the objection.

¶ 23 The final day of the bench trial was April 27, 2017. The defense called several police officers who already had testified in the State's case. Also, defendant testified in his own behalf. He claimed it had been Payne alone, not he, who was selling cocaine out of the motel room.

He insisted that he had been in the motel room only to enjoy the party, smoke cocaine, and have sex with Payne, not to sell any of the cocaine. He had possession of the $100, he explained, only because Payne had given it to him so that he could go across the street and buy her some liquor and cigarettes.

¶ 24        The circuit court did not believe defendant. His testimony, the court observed, was hard to square with the video-recorded statement he had made to the police. Therefore, the court found defendant guilty of possessing, with the intent to deliver, the 5.2 grams of cocaine in the motel room. See 720 ILCS 570/401(c)(2) (West 2014). And the court also found him guilty of delivering 0.4 grams of cocaine to Dillingham. See *id.* § 401(d)(i).

¶ 25        On May 26, 2017, Morris filed, on defendant's behalf, a motion for a new trial.

¶ 26        On May 29, 2017, defendant filed a *pro se* motion for a new trial. In this motion, he accused Brown of rendering ineffective assistance. In another such *pro se* motion, which defendant filed that same day, he accused both Brown and Morris of rendering ineffective assistance.

¶ 27        On June 23, 2017, the circuit court denied the posttrial motion that Morris had filed. And after holding yet another *Krankel* hearing, the court denied the *pro se* posttrial motions that defendant had filed.

¶ 28        The circuit court then held a sentencing hearing. The parties agreed that because of defendant's criminal history, he had to be sentenced as a Class X offender. In aggravation, the State presented evidence of defendant's criminal history, including 5 prior felony convictions, 9 misdemeanor convictions, and 36 traffic violations. The State argued that, considering defendant's lack of a history of legitimate employment, he seemed to be more of a drug dealer than a drug addict. In mitigation, the court considered a letter from defendant's brother, Ron Kirkwood,

describing their difficult upbringing in a gang- and drug-infested neighborhood of Chicago and noting defendant's pride in having recently found employment. Defendant made a statement in allocution. He expressed remorse and acknowledged his past mistakes, including his struggles with drug addiction and his involvement in petty crimes. He described his efforts to find lawful employment and his desire to be present to support his daughters. While in jail, he had earned diplomas for courses in life skills, recovery, and job partnership.

¶ 29    After considering the evidence in aggravation and mitigation and hearing the arguments and defendant's statement in allocution, the circuit court found that defendant had the capacity for rehabilitation. In the court's view, there was hope for him, as was evident from his statement in allocution and the self-improvement courses he had completed while in jail. On the other hand, though, the court could not ignore defendant's extensive criminal history and his longtime lack of legitimate employment. Comparing the positive and negative sides of the ledger, the court settled on two concurrent terms of 14 years' imprisonment.

¶ 30    On July 18, 2017, Morris filed, on defendant's behalf, a motion to reconsider the sentences. The only argument this motion made was that defendant should not have received a more severe sentence than his codefendant, Payne, had received (after being tried separately):

> "1. On June 23, 2017, this Honorable Court sentenced the Defendant to a term of 14 years in the Department of Corrections for the offense of pos[s]ession of cocaine with the intent to deliver.
>
> 2. That the Defendant's participation in the crime occurring at the motel was less than that of the room occupant and the sentence she received."

¶ 31     On September 21, 2017, defendant filed a "Motion for Reconsideration of Amended Motion for Ineffective Assistance of Counsel," in which he again criticized the performance of Brown and Morris.

¶ 32     In a hearing on October 27, 2017, the circuit court held a final *Krankel* hearing, discussing with defendant his complaints against Brown and Morris. Again finding no possible neglect of defendant's case, the court declined to appoint substitute defense counsel. Also, the court denied Morris's motion to reduce the sentences.

¶ 33     This appeal followed.

¶ 34                              II. ANALYSIS

¶ 35                   A. The Adequacy of the *Krankel* Inquiry

¶ 36     Defendant complains that on October 20, 2016, the circuit court "failed to conduct a sufficient preliminary *Krankel* inquiry into [defendant's] *pro se* allegation that McLean County Public Defender Carla Barnes and Assistant Public Defender Jeff Brown forced him to waive his right to a jury trial in order to get a continuance." Defendant acknowledges that the court "did conduct a preliminary *Krankel* inquiry into several of [defendant's] complaints about counsel." Nevertheless, defendant criticizes the court for "conduct[ing] no further inquiry into [defendant's] allegation that his jury waiver had been coerced by threats from *** Barnes and *** Brown that they would not seek a continuance in his case unless he waived his right to a jury trial."

¶ 37     But defendant never made that allegation. Instead, in the pages of the record that he cites, he told the circuit court: "Both of them tricked me into signing a jury waiver alleging that a witness was here to see me—to testify against me. I need a continuance. In order for me to get that continuance[,] I had to sign my rights to a jury away." Most likely, a witness was on standby to testify against defendant on September 12, 2016, since the jury trial was scheduled to begin that

day. In any event, trickery is not coercion. The quoted statement that defendant made to the circuit court was not an allegation that defense counsel had refused to move for a continuance unless defendant waived his right to a jury trial. We do not see where defendant said that. Instead, he said that "to *get* a continuance" (not to move for one), he had to sign away his right to a jury. (Emphasis added.) In other words, the only way he could *obtain*—not request, but obtain—a continuance on the day of the scheduled jury trial was to waive a jury and consent to a bench trial, thereby necessitating a rescheduling. And he may well have been right. This was an allegation of being constrained by circumstances, not by defense counsel.

¶ 38  In short, we cannot reasonably fault the circuit court for omitting to "conduct[] [a] further inquiry" into an allegation that defendant never made.

¶ 39        B. The Severity of the Sentence

¶ 40  Defendant argues that the concurrent 14-year prison sentences are too severe and fail to reflect his rehabilitative potential.

¶ 41  The State counters that defendant has procedurally forfeited this argument. The State is correct. To preserve a sentencing issue for appellate review, a defendant must raise the issue in a post-sentencing motion filed with the circuit court within 30 days after imposition of the sentence. *People v. Hanson*, 2014 IL App (4th) 130330, ¶ 15. Defendant, through his attorney, Morris, filed a timely postsentencing motion, but the only argument the motion made was that defendant should not have received a more severe sentence than Payne, whose participation in the crime allegedly was greater. Consequently, the only sentencing issue that would be preserved for appellate review is an issue that defendant does not raise on appeal—whether he deserved a lighter sentence in view of the sentence his codefendant received.

¶ 42        It is true that, in addition to the motion by his defense counsel, defendant filed his own *pro se* motion to reconsider the sentences. But "[a] trial court should not consider *pro se* motions filed by defendants who are represented by counsel. [Citation.] The only exception is where a defendant's *pro se* motion is directed against his or her counsel's performance. [Citation.] That exception stems from a line of cases beginning with *Krankel*." *People v. Bell*, 2018 IL App (4th) 151016, ¶ 28. The circuit court held a further *Krankel* hearing, in which the court inquired into the claims of ineffective assistance that defendant raised in his *pro se* motion to reconsider the sentences. Otherwise, the *pro se* motion had to be disregarded. See *id.*

¶ 43        Defendant admits that defense counsel's motion for reconsideration of the sentences "did not specifically argue that the court's sentence failed to adequately reflect his rehabilitative potential." But defendant seeks to avoid the resulting forfeiture by invoking the doctrine of plain error. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 44        The supreme court has held: "To obtain relief under [the plain-error doctrine], a defendant must *first* show that a clear or obvious error occurred. [Citation.] In the sentencing context, a defendant must *then* show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." (Emphases added.) *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 45        A supposedly faulty weighing of substantial factors in aggravation and mitigation is merely an arguable error, not a clear and obvious error. Otherwise, procedural forfeiture would have no meaning. Under *Hillier*, we do not reach the allegedly "closely balanced" aggravating and mitigating factors until after we find "a clear or obvious error." *Id.*; *cf. People v. Fort*, 2017 IL 118966, ¶ 39 (holding that sentencing the defendant as an adult "was clear and obvious error because it directly violated the express language in the statute"); *People v. Adame*, 2018 IL App

(2d) 150769, ¶ 17 (holding that the circuit court clearly erred by ordering the defendant to pay $1100 in restitution for a credenza after finding that the State had failed to prove that the credenza was worth more than $500).

¶ 46        We do not mean to suggest that a misevaluation of the aggravating and mitigating factors can *never* be a plain error. (Suppose, for example, that the only aggravating factor was a previous minor traffic violation and yet the defendant received the maximum prison sentence.) To get an idea, though, of how stark the sentencing error would have to be to qualify as a plain error, consider that, under the ordinary standard of review—abuse of discretion (*People v. Sven*, 365 Ill. App. 3d 226, 241 (2006))—the defendant would have to establish that no reasonable person could agree with so severe a sentence (*id.* at 243). This ordinary standard of review is demanding enough. See *People v. Coleman*, 183 Ill. 2d 366, 387 (1998) (remarking that abuse of discretion is "the most deferential standard of review available with the exception of no review at all" (Internal quotation marks omitted.)). For the defendant to go further and cross the threshold of the plain-error doctrine, the showing would have to be even more extraordinary—it would have to be clear or obvious that no reasonable person would agree with the sentence. See *Hillier*, 237 Ill. 2d at 545; *Sven*, 365 Ill. App. 3d at 241.

¶ 47        Defendant does not come close to meeting that extremely demanding standard. He is, after all, a repeat drug dealer who received considerably less than the maximum punishment. He was convicted this time of the Class 1 felony of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2014)) and the Class 2 felony of possession of a controlled substance with the intent to deliver it (*id.* § 401(c)(2)). Having previously been convicted of two Class 2 felonies of unlawfully delivering a controlled substance, he had to be sentenced as a Class X offender. See 730 ILCS 5/5-4.5-95(b) (West 2014). The Class X range was imprisonment for

no less than 6 years and no more than 30 years. *Id.* § 5-4.5-25(a). The circuit court sentenced defendant to 14 years' imprisonment—16 years less than the maximum. Considering that defendant had twice before been convicted of delivering drugs, it is not *clear or obvious* that this sentence is an abuse of discretion. See *People v. Minter*, 2015 IL App (1st) 120958, ¶ 147. (We realize that a prior criminal history already was factored into section 5-4.5-95(b). Even so, the prior Class 2 felonies did not have to be the *same misconduct* of which defendant was convicted yet again—delivering drugs.)

¶ 48        By making the argument that the circuit court gave too much weight to his history of felonies and too little weight to his rehabilitative potential, defendant does not argue clear or obvious error. Rather, he makes the same abuse-of-discretion argument that defendants usually make when challenging their sentences—as if there had been no procedural forfeiture. Finding no clear or obvious error in the sentence, we advance no further in the plain-error analysis, and we hold defendant to his procedural forfeiture of this sentencing issue. See *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 49                          III. CONCLUSION

¶ 50        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 51        Affirmed.