NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241039-U

NO. 4-24-1039

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 9, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| WALLACE R. BRAXTON, | ) | No. 21CF59 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's sentence must be vacated and the matter remanded for a new sentencing hearing where he established that his defense counsel provided ineffective assistance by misapprehending the applicable sentencing law and improperly acquiescing to the trial court's imposition of a mandatory consecutive sentence.

¶ 2     Defendant, Wallace R. Braxton, entered an open plea of guilty to aggravated driving while his license was revoked (DWLR) (625 ILCS 5/6-303(a), (d-5) (West 2020)), a Class 2 felony. The trial court sentenced him to 10 years in prison and ordered that his sentence be served consecutively to his sentence in another case. Defendant appeals, arguing he is entitled to a remand for additional postplea proceedings or a new sentencing hearing where his counsel misapprehended the applicable sentencing law, improperly acquiesced to the court's imposition of a mandatory consecutive sentence against him, and failed to raise the issue of consecutive sentencing during postplea proceedings. Defendant also contends his 10-year sentence is excessive

and asks this court to reduce his sentence "to a level compatible with the ends of justice and equity." We vacate defendant's sentence and remand for a new sentencing hearing.

¶ 3                                    I. BACKGROUND

¶ 4        In May 2021, a grand jury indicted defendant on one count of aggravated DWLR, a Class 2 felony (*id.*). The charge was based on allegations that on or about April 2, 2021, defendant drove a motor vehicle at a time when his driving privileges were revoked for driving under the influence (DUI) and he had multiple prior convictions for the same or similar offense.

¶ 5        The record shows that at the time the underlying charge arose, defendant had pending charges in McLean County case No. 20-CF-1435 for aggravated DUI and driving with a revoked or suspended license. In December 2021, he was sentenced to five years in prison in connection with those charges.

¶ 6        In April 2023, defendant entered an open plea of guilty to the charged offense in this case. In return for defendant's guilty plea, the State agreed to dismiss four traffic cases that were pending against him. At defendant's guilty plea hearing, the trial court admonished him regarding the rights he was giving up by pleading guilty and the consequences of his plea, including that he was extended-term eligible and could be sentenced to up to 14 years in prison. The State informed the court that defendant faced mandatory consecutive sentencing because he was "out on bond" in another case "when he committed [the charged] offense." The court then admonished defendant that he "must be sentenced to a consecutive sentence to the case that [he] was out on bond on when [the charged] offense was alleged to have occurred." It further explained that if defendant's presentence investigation report (PSI) showed "circumstances dictate a mandatory consecutive sentence," then the court "must sentence [him] to a consecutive sentence."

¶ 7        According to the State's factual basis, a law enforcement officer using a "handheld

radar unit" observed a vehicle traveling 78 miles per hour in a 55 mile-per-hour zone. The officer stopped the vehicle, which was occupied by two individuals. Defendant was identified as the driver of the vehicle and, after "dispatch advised he had a revoked license and had warrants out for his arrest," he was taken into custody. The State asserted its evidence also included a certified copy of defendant's driving abstract, showing defendant lost his driving privileges due to a DUI. Additionally, it stated that it intended to show at sentencing that defendant had "approximately 24 [DWLR] based on DUI."

¶ 8         Upon further inquiry by the trial court, defendant denied that there had been any threats, force, or promises made to get him to plead guilty, and he persisted in his plea. The court accepted defendant's guilty plea and set the matter for sentencing.

¶ 9         In May 2023, defendant's PSI was filed, showing he was 61 years old at the time of the charged offense. He had a lengthy criminal history, which he reported dated back to 1971 in the state of Michigan. Defendant self-reported that, in Michigan, he had a prior juvenile adjudication for "Stealing," as well as convictions for selling marijuana and assault. The PSI also showed that his criminal history included prior convictions in Michigan and Illinois for escape (1990), possession of a controlled substance (1992, 2013, and 2016), domestic violence (twice in 1996 and once in 1997), DUI (2001, 2002, 2005, and 2020), resisting a peace officer (2002), possession of a firearm by a felon (2011), and theft (2011 and 2013). He further had numerous traffic-related convictions and at least 27 prior convictions for driving with his license suspended or revoked, at least five of which were classified as felony offenses. Defendant had been sentenced to terms of imprisonment in Michigan and Illinois. Most notably, in both 2005 and 2007, he was convicted of felony driving with a revoked or suspended license and sentenced to prison terms in the Illinois Department of Corrections (DOC) of 18 months and 26 months, respectively. In 2013,

he was convicted of unlawful possession of a controlled substance and felony driving with a revoked or suspended license and sentenced to three years in DOC. Most recently, in McLean County case No. 20-CF-1435, defendant was convicted of aggravated DUI and driving with a revoked or suspended license and sentenced to five years in prison.

¶ 10    The PSI further showed that defendant attended school through eleventh grade and reported receiving his GED in Michigan in 1988. At the time of the charged offense, he was employed full-time. Defendant maintained that his position with his employer was " 'still available.' " Additionally, he reported having good relationships with his parents and siblings and stated that he took care of his father, who had " 'dementia setting in.' " The PSI also showed that defendant was divorced with three adult children.

¶ 11    Defendant acknowledged a history of alcohol and drug use. He considered himself an alcoholic, asserting his alcohol abuse began in 2000, when the mother of his children died. He acknowledged that he had been drinking at the time of the charged offense but asserted that he " 'wasn't drunk.' " Further, he stated he received substance abuse treatment in November 2021, while incarcerated in connection with his McLean County case. Defendant maintained he had successfully completed that treatment program. Additionally, he reported that he was currently receiving "treatment for 'criminal and addictive behavior' " while in prison.

¶ 12    A typewritten statement authored by defendant was attached to his PSI. In the statement, defendant apologized and asserted he took "full accountability for committing" the charged offense. He acknowledged that he chose to drive without a license, which had previously been revoked. Defendant maintained that his illegal conduct stemmed from "an uncontrolled drinking problem" and asserted that his "thinking ha[d] changed." Although defendant's PSI stated he obtained his GED in 1988, defendant represented in his written statement that he had been

studying for his GED during his recent incarceration. He also stated that he had decided to attend Alcoholics Anonymous and was "committed to change." Defendant asked that the sentencing court consider his father's ill health; that, in his absence, his father was being taken advantage of by family members; and that his previous employer guaranteed his "resumed employment upon [his] release."

¶ 13    Also in May 2023, the trial court conducted defendant's sentencing hearing. The parties noted their receipt of the PSI, and the State asserted that it had no additional evidence to present. Defendant presented testimony from his mother, Julie Cox, who stated she was in ill health and that defendant had been "a help" to both her and his father before defendant was taken into custody. Cox also testified that she had a good relationship with defendant and believed he was learning that he had to change his behavior.

¶ 14    Defendant further submitted evidence that he was participating in a substance abuse treatment program while in prison, as well as two letters written on his behalf. A letter written by Brian Beals, an incarcerated individual, described defendant as a good friend and noted defendant's participation in programs while in prison, including a substance abuse program. He described defendant as using his experiences to help other inmates. Beals also stated his belief that defendant had learned from his mistakes and was prepared and committed to living sober. A letter written by defendant's aunt, Gloria Braxton, described defendant as a "good person" and noted that defendant helped take care of his father, who had dementia. Defendant's attorney, Andrew Lankton, represented to the trial court that a third letter had been submitted by defendant's recent employer. Although he stated he did not have the letter at the time of the hearing, he proffered, without objection, that the letter described defendant as a good employee and stated "that there [was] a job waiting for [defendant] when he gets out [of prison]."

¶ 15          Defendant made a statement in allocution, apologizing to the State and acknowledging that he ignored the law by driving. He asserted he had a problem with "drugs and alcohol and not knowing how to deal with things that had affected [him]." Defendant maintained, however, that while in prison, he "finally reached out to a program" that made him realize he "wasn't right."

¶ 16          In presenting its argument to the trial court, the State asserted defendant was extended-term eligible and faced a sentencing range of up to 14 years in prison. It also argued defendant's sentence was "going to be mandatorily consecutive" to the sentence he received in McLean County case No. 20-CF-1435. The State asked the court to impose a sentence of 13 years in prison, noting defendant's "abhorrent" criminal record. On defendant's behalf, Lankton asked the court to impose a sentence of six years in prison. In agreeing with the State's contention regarding how defendant's sentence was to be served, counsel stated as follows: "So, yes, it's mandatorily consecutive, and I think that's something for the court to consider." Lankton further argued that the offense was a "a non-violent charge" and there had been "[n]o showing of any contemplation of causing any harm or that any harm was caused to anybody." He also asserted that much of defendant's criminal history was old, defendant had taken responsibility for his actions, defendant had received treatment in prison, and defendant had family support.

¶ 17          The trial court sentenced defendant to 10 years in prison and ordered that his sentence run consecutively with the sentence imposed in McLean County case No. 20-CF-1435. The court concluded that the applicable mitigating factors were that defendant's criminal conduct neither caused nor threatened serious physical harm to another and that defendant did not contemplate that his criminal conduct would cause or threaten such harm. In aggravation, the court found that "defendant ha[d] one of the most extensive criminal histories [that it had] ever seen"

and that the imposed sentence was necessary to deter others.

¶ 18        Defendant filed a motion to reconsider his sentence. He argued his 10-year sentence was excessive in light of the evidence presented, including evidence showing that his criminal conduct did not cause or threaten serious physical harm to another, he did not contemplate that his criminal conduct would cause or threaten serious physical harm to another, and he had participated in a substance abuse treatment program.

¶ 19        In July 2023, the trial court conducted a hearing and denied defendant's motion to reconsider. It noted that it had considered the statutory mitigating factors referenced in defendant's motion when imposing its sentence. The court stated that when balancing the relevant mitigating and aggravating factors, it "felt that a 10-year sentence was an appropriate sentence." The court further stated that it had heard nothing to suggest that it had erred in its sentencing determination.

¶ 20        Defendant appealed the trial court's judgment. On appeal, the parties filed an agreed motion for summary remand on the basis that Lankton had filed a facially deficient certificate under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). This court allowed the motion, ordering as follows:

> "This matter is remanded to the circuit court for the filing of a new Supreme Court Rule 604(d) certificate; the opportunity to file a new postplea motion, if counsel concludes that a new motion is necessary; a new hearing on the motion; a new judgment; and strict compliance with the requirements of Rule 604(d)." *People v. Braxton*, No. 4-23-0653 (Nov. 29, 2023) (order for summary remand).

¶ 21        On April 2, 2024, on remand, Lankton filed a new Rule 604(d) certificate. He asserted that he (1) had consulted with defendant in person, by mail, by phone, or by electronic means to ascertain his contentions of error in his plea and sentence; (2) examined the trial court

file and report of proceedings of both defendant's guilty plea and the sentencing hearing; and (3) "made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 22       The same day, the trial court conducted a hearing in the matter. The court noted its receipt of Lankton's new Rule 604(d) certificate and asked whether he deemed it necessary to file a new postplea motion on defendant's behalf. Lankton responded that an issue had been raised regarding DOC's failure to give defendant the appropriate amount of sentence credit. The court ultimately continued the matter so that Lankton could explore that issue on defendant's behalf with DOC and possibly file a new postplea motion.

¶ 23       In May 2024, the parties appeared again before the trial court. Lankton indicated he was not yet ready to proceed with a postplea hearing, stating as follows:

> "Judge, in reviewing things again today it appears that it was brought—raised and argued, and I conceded the mandatory consecutive nature of this charge. In reviewing the law this is—the law had changed to where it was permissive consecutive. But everything was treated as if it was mandatory. And I think that needs to be raised *** [in] the motion to reconsider."

Lankton further informed the court that the issue had not previously been raised in writing and that he had not had the opportunity to discuss it with defendant. He then agreed with the court's suggestion that he needed to file both an amended motion to reconsider and a new Rule 604(d) certificate.

¶ 24       The State acknowledged that the transcript of defendant's guilty plea hearing showed "a discussion about how [defendant's sentence] was mandatorily consecutive" and asserted defendant had "a valid claim at least as far as filing a motion." The trial court explained

the matter to defendant, stating that while mandatory consecutive sentences had been required in circumstances like defendant's, the law had changed so that the imposition of consecutive sentences was now "permissive or non-mandatory" and necessitated "a different type of evaluation." The court further informed defendant that Lankton would speak with him about the matter, draft another motion to reconsider for defendant to review, and file a new Rule 604(d) certificate. The court then continued the matter for further hearing.

¶ 25        Ultimately, the record fails to reflect that Lankton filed either an amended postplea motion or a new Rule 604(d) certificate. In July 2024, the trial court called the matter "for a hearing on a motion to reconsider sentence." It recounted the procedural history of the case, including that, on appeal, the matter was remanded for compliance with Rule 604(d). The court noted that it did not see an amended postplea motion in the record and, upon inquiry by the court, Lankton asserted that he did not believe it was necessary that he file a new postplea motion. By way of explanation, Lankton informed the court that he had communicated with DOC on defendant's behalf regarding the sentence credit issue and that the matter concerned "an internal issue with" DOC and not the court's sentencing order. Lankton further indicated that he was proceeding only on defendant's original motion to reconsider "because there really are no changes" and argued as follows:

> "[T]his is an aggravated [DWLR]. *** [O]bviously, it's non-violent in nature. There is no showing of any harm being caused or threatened or that he would have contemplated causing any harm. And the additional fact *** is [defendant] has been actively participating in substance abuse treatment. And for those reasons he is asking the court to reconsider the 10-year sentence that was consecutive to the McLean [County] sentence, which is already elevated as a Class 2, obviously, and sentence him lower in the sentencing range and potentially reconsider the

consecutive nature as well \*\*\*. Thank you.”

¶ 26 The State responded that the transcript of defendant's sentencing hearing showed the trial court's consideration of the matters referenced by defendant in his motion to reconsider. It further noted defendant's sentence was within the applicable sentencing range and asked the court to deny his motion. After Lankton asserted he had nothing further to add, the court denied defendant's motion, stating as follows:

“Those factors [raised by defendant] were considered by the court, as was argued by the State. You disagree with the weight that I gave to them. The court looked also at your prior criminal history and the number of offenses that you have committed in your lifetime.

In balancing all those factors and giving appropriate weight to each of the factors[,] the court came to the conclusion that a 10-year sentence to [DOC] was a necessary sentence. I see nothing in this motion or the arguments I have heard today to dissuade me from that original position. I, therefore, will deny your motion to reconsider the sentence.”

¶ 27 This appeal followed.

¶ 28 II. ANALYSIS

¶ 29 A. Consecutive Sentencing

¶ 30 On appeal, defendant first argues that Lankton misapprehended the sentencing law that applied to his case, causing him to acquiesce to the trial court's erroneous imposition of a mandatory consecutive sentence. Specifically, he contends that while the underlying DWLR offense was pending, the legislature amended section 5-8-4 of the Unified Code of Corrections (Code) (see Pub. Act 102-1104, § 90 (eff. Dec. 6, 2022) (amending 730 ILCS 5/5-8-4)), making

him eligible for permissive—rather than mandatory—consecutive sentencing. Defendant further asserts that Lankton failed to meaningfully address that sentencing error during his postplea proceedings. He seeks either a remand for further postplea proceedings or a new sentencing hearing, asserting Lankton (1) did not strictly comply with Rule 604(d) because he failed to amend defendant's postplea motion to reconsider to include the consecutive-sentencing claim and (2) provided ineffective assistance both at sentencing and during the postplea proceedings on remand by failing to challenge the imposition of a mandatory consecutive sentence.

¶ 31        A defendant has the right "to be sentenced under either the law in effect at the time the offense was committed or that in effect at the time of sentencing." *People v. Hollins*, 51 Ill. 2d 68, 71 (1972). Absent "a showing that [the defendant] was advised of his right to elect ***, and an express waiver of that right, [he is] denied due process of law." *Id.*

¶ 32        Initially, defendant accurately identifies the change to the consecutive sentencing law that applied to him. At the time of his charged offense in 2021, the Code provided as follows:

> "(d) Consecutive terms; mandatory. The court *shall* impose consecutive sentences in each of the following circumstances:
>
> * * *
>
> (8) If a person charged with a felony commits a separate felony while on pretrial release or in pretrial detention in a county jail facility or county detention facility, then the sentences imposed upon conviction of these felonies *shall be served consecutively* regardless of the order in which the judgments of conviction are entered." (Emphases added.) 730 ILCS 5/5-8-4(d)(8) (West 2020).

However, effective December 6, 2022, and prior to defendant's sentencing in May 2023, the Code

was amended to provide for permissive consecutive terms of imprisonment in such circumstances:

"(c) Consecutive terms; permissive. The court *may* impose consecutive sentences in any of the following circumstances:

\* \* \*

If a person charged with a felony commits a separate felony while on pretrial release or in pretrial detention in a county jail facility or county detention facility, then the sentences imposed upon conviction of these felonies *may be served consecutively* regardless of the order in which the judgments of conviction are entered." (Emphases added.) 730 ILCS 5/5-8-4(c)(3) (West 2022).

¶ 33       On appeal, the State first contends that defendant has both forfeited and waived his consecutive-sentencing claim of error by failing to raise it with the trial court in a postsentencing or postplea motion. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."); see also Ill. S. Ct. R. 604(d) (eff. Dec. 7, 2023) (providing that on appeal from a judgment entered upon a plea of guilty, "any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived"). However, although not cited by either party, our own research reveals that prior decisions of this court have held that the principles of forfeiture and waiver do not apply to the underlying issue presented by defendant's appeal. *People v. Strebin*, 209 Ill. App. 3d 1078, 1081 (1991); *People v. McCall*, 2024 IL App (4th) 230651-U, ¶¶ 21-22.

¶ 34       In *Strebin*, 209 Ill. App. 3d at 1080-81, the defendant pleaded guilty and, on review, challenged his sentence based on the contention that he was not advised of his right to elect under

which version of a statute he was sentenced. The State maintained the issue was waived based on the defendant's failure to raise it with the trial court. *Id.* at 1081. However, this court disagreed, finding that the supreme court's decision in *Hollins* placed "an affirmative duty on the trial court to advise a defendant of his right to elect under which sentencing procedures defendant should be sentenced, namely, those in effect at the time the offense was committed or those in effect at the time of the sentencing hearing." *Id.* We held that "[b]ecause no such advice was given ***, [the] defendant [could not] be found to have waived [his] argument on appeal." *Id.*

¶ 35    In *McCall*, 2024 IL App (4th) 230651-U, ¶ 18, a recent unpublished decision from this court, the defendant raised the same issue presented by this appeal regarding the improper imposition of mandatory consecutive sentences. See Ill. S. Ct. Rule 23(e)(1) (eff. June 3, 2025) (providing "a nonprecedential order entered *** on or after January 1, 2021, may be cited for persuasive purposes"). In finding the issue could not be forfeited based upon the defendant's failure to raise the issue with trial court, we relied on our prior holding in *Strebin*. *McCall*, 2024 IL App (4th) 230651-U, ¶ 21. We also held that because the imposition of an unauthorized sentence affects substantial rights, the issue may be considered on appeal even without being properly preserved in the trial court. *Id.* (citing *People v. Fort*, 2017 IL 118966, ¶ 19).

¶ 36    Moreover, even absent such authority, we find waiver and forfeiture do not apply to the precise issues raised by defendant in this appeal. Specifically, defendant does not present a direct challenge to the trial court's imposition of a mandatory consecutive sentence. Instead, he raises the claim through allegations that his counsel (1) failed to strictly comply with the requirements of Rule 604(d) during postplea proceedings and (2) provided ineffective assistance by failing to properly raise his consecutive-sentencing claim with the trial court. Both claims are based on a challenge to the adequacy of the representation provided by Lankton, defendant's

counsel at the time of his guilty plea and during postplea proceedings. Neither claim is procedurally barred. See *People v. Lawton*, 212 Ill. 2d 285, 296 (2004) (stating "[a]n attorney cannot be expected to argue his own ineffectiveness," and the failure to do so "does not waive the issue on appeal"). In this instance, we find reversible error based on defendant's claim that Lankton provided ineffective assistance.

¶ 37　　　　Ineffective-assistance-of-counsel claims are evaluated under the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Torres*, 2024 IL 129289, ¶ 26. "Under the *Strickland* standard, *** a defendant must show (1) that his attorney's representation fell below an objective standard of reasonableness and (2) that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *Id.* ¶ 27. "A defendant's failure to satisfy either prong of the *Strickland* standard precludes a finding of ineffective assistance of counsel." *Id.*

¶ 38　　　　Here, defendant acknowledges that he was on pretrial release in McLean County case No. 20-CF-1435 when he was arrested for the underlying offense. Also, there appears to be no dispute that he had the right to elect sentencing under the December 2022 amended Code, providing for permissive, rather than mandatory, consecutive sentences under such circumstances. See Pub. Act 102-1104, § 90 (eff. Dec. 6, 2022) (amending 730 ILCS 5/5-8-4(c)(3)). The record fails to show, however, that defendant was ever informed of his right to elect sentencing under either the law in effect at the time his offense was committed or the law in effect at the time of his sentencing. Instead, the record demonstrates that it was the belief of both the parties and the trial court that any sentence imposed for the underlying offense had to be mandatorily consecutive to defendant's McLean County sentence.

¶ 39　　　　At defendant's April 2023 guilty plea hearing, the State represented that defendant

faced mandatory consecutive sentencing because he was "out on bond" in another case "when he committed [the charged] offense." The trial court then admonished defendant that he "must be sentenced to a consecutive sentence to the case that [he] was out on bond on when [the charged] offense was alleged to have occurred." Moreover, at defendant's May 2023 sentencing hearing, the State argued that any sentence imposed by the court was "going to be mandatorily consecutive" to the sentence defendant received in his McLean County case. Lankton offered no objection to the State's comment regarding consecutive sentencing and, in fact, agreed with the State's representation, stating, "[Y]es, it's mandatorily consecutive, and I think that's something for the court to consider." Thus, not only did Lankton agree that the court had to impose a consecutive sentence, he also explicitly asked the court to consider that fact when determining the length of defendant's prison term. See *People v. Davis*, 2014 IL App (4th) 121040, ¶ 23 ("Defense counsel may be ineffective for misunderstanding applicable law."). The court then sentenced defendant to 10 years in prison, ordering that his sentence be served consecutively to the sentence imposed in his McLean County case. Accordingly, despite amendments to the consecutive sentencing statute that made the imposition of consecutive sentences permissive and a matter of the court's discretion, the record shows the court did not exercise any discretion and, instead, imposed a mandatory consecutive sentence.

¶ 40    Additionally, during postplea proceedings on remand, Lankton identified the issue, noting he had "conceded the mandatory consecutive nature of [the] charge" when "the law had changed to where it was permissive consecutive" and that "everything was treated as if it was mandatory." He informed the trial court that the issue needed to be included in defendant's motion to reconsider his sentence, and the court granted additional time for the filing of an amended motion. Inexplicably, however, the issue was never again raised with the court. No amended

motion to reconsider was filed, and the only issue argued by Lankton at defendant's postplea hearing was the excessive-sentence claim contained within defendant's original motion to reconsider his sentence. Although, at the postplea hearing, Lankton concluded his argument by asking the court to reconsider defendant's 10-year sentence and to "potentially reconsider the consecutive nature as well," he offered no developed argument to support that bare request. Also, nothing in the court's comments reflects that it recognized defendant as having raised a challenge to the imposition of a mandatory consecutive sentence or that it recalled any discussion regarding that issue from the prior status hearing.

¶ 41    To support his claim of error on appeal, defendant cites *People v. Mescall*, 403 Ill. App. 3d 956 (2010). There, the defendant was sentenced to consecutive sentences for four counts of predatory criminal sexual assault of a child that were alleged to have occurred between June 1995 and September 1996. *Id.* at 957-58. The defendant filed a postconviction petition, alleging ineffective assistance of his trial and appellate counsel for failing to challenge the trial court's alleged error in imposing mandatory consecutive sentences. *Id.* at 960. The trial court summarily dismissed the petition, and the defendant appealed. *Id.*

¶ 42    On review, the Second District reversed, finding the defendant's claim was arguably meritorious and that it was "evident" that both the trial court and the parties "mistakenly believed that consecutive sentences were statutorily mandated in [the] defendant's case." *Id.* at 963. Specifically, the court noted that at the time of the defendant's sentencing, the applicable statute mandated consecutive sentences if there were criminal acts committed as a single course of conduct. *Id.* at 964. However, in the defendant's case, neither the charges nor the evidence at trial established that the charged acts were committed in that manner. *Id.* at 965. Additionally, although the statute was later amended to require consecutive sentences under the circumstances of the

defendant's case, the amendment did not apply to the defendant. *Id.* at 964.

¶ 43         In reaching its decision, the Second District rejected an argument that the defendant's claim lacked merit because the trial court still had the discretion to impose consecutive sentences, including when consecutive sentences were necessary to protect the public from further criminal conduct by the defendant. *Id.* at 966 (quoting 730 ILCS 5/5-8-4(b) (West 1996)). The court stated as follows:

> "The record indicates the sentencing judge imposed consecutive sentences because he believed those sentences to be statutorily mandated under the 1997 amended version of [the consecutive sentencing statute]. It is clear from the record that the sentencing judge did not exercise any discretion under the 1996 version of [the statute]. In fact, nothing in the record indicates that the judge imposed the sentences to protect the public from further criminal conduct by [the] defendant. ***
>
> Thus, it appears that the trial court erred in relying on the 1997 version of [the statute] in imposing mandatory consecutive sentences. We conclude therefore that [the] defendant's claim that trial counsel was ineffective for failing to object to this error and failing to advise the trial court that defendant was entitled to be sentenced under the more lenient version of the statute has an arguable basis in both the facts and the law." *Id.*

¶ 44         Here, for the reasons set forth above, the record similarly shows that both the trial court and the parties operated under the erroneous belief that defendant was subject to mandatory consecutive sentencing. Although the relevant amended statute provided for permissive consecutive sentences at the time of defendant's sentencing, the record shows defendant was never advised of his right to elect sentencing under the more lenient amended statute. We agree that

Lankton provided deficient performance by failing to raise the issue with the trial court at sentencing. Lankton further performed deficiently by recognizing the error during postplea proceedings on remand but then never properly raising the issue with the court through an amended motion to reconsider or reasoned argument at the postplea hearing.

¶ 45         We also find defendant was prejudiced by the error. Establishing prejudice does not require certainty but, instead, "a reasonable probability." *People v. Lewis*, 2022 IL 126705, ¶ 46. Here, the trial court imposed a mandatory consecutive sentence without exercising any discretion. Had the issue been properly raised and a reasoned argument presented in opposition to the imposition of a consecutive sentence, there is a reasonable probability that the court would have determined consecutive sentencing was unwarranted. Although defendant had a significant criminal history and the court expressed the need for deterrence, there was also mitigating evidence weighing in defendant's favor.

¶ 46         We note that on appeal, the State raises an argument like the one rejected in *Mescall*. It contends the imposition of a consecutive sentence was appropriate because the record shows the trial court believed it was necessary to protect the public from defendant's criminal conduct. See 730 ILCS 5/5-8-4(c)(1) (West 2022) (providing that a sentencing court may impose consecutive sentences "[i]f, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public from further criminal conduct by the defendant"). Additionally, it seeks to distinguish *Mescall* on the basis that the trial court below "exercised discretion in imposing a consecutive sentence." We disagree.

¶ 47         The record clearly shows that both parties represented to the trial court that a mandatory consecutive sentence was required in defendant's case. Nothing in the court's

comments at sentencing reflects that it had any different understanding of the circumstances or that it exercised any discretion when ordering that defendant's sentence be served consecutively to the one imposed in his McClean County case. Also, when Lankton referenced the consecutive sentencing error during the postplea proceedings on remand, indicating that he needed additional time to include it within an amended postplea motion, the court appeared to acknowledge the error, informing defendant that "we treated it as these two cases had to be dealt with consecutively." Contrary to the State's assertions on appeal, the circumstances in the present case are like those in *Mescall*, where the court imposed a mandatory consecutive sentence without exercising any discretion.

¶ 48 Under the circumstances presented, we agree with defendant that Lankton provided ineffective assistance of counsel. We vacate defendant's sentence and remand the matter for a new sentencing hearing. See *People v. Anderson*, 93 Ill. App. 3d 646, 656 (1981) (stating that where the record is devoid of evidence showing a defendant knew of his right to elect under which law he is sentenced, the defendant's sentences must be vacated and the cause remanded for a new sentencing hearing).

¶ 49                                    B. Excessive Sentence

¶ 50 On appeal, defendant also argues that the trial court's imposition of a 10-year prison sentence was excessive given the nature of the offense and the compelling mitigating evidence. However, because a remand for a new sentencing hearing is required based on defendant's consecutive-sentencing claim, we find it unnecessary to reach the merits of this additional claim and decline to address it.

¶ 51                                    III. CONCLUSION

- 19 -

¶ 52    For the reasons stated, we vacate defendant's sentence and remand for a new sentencing hearing so that the trial court may exercise its discretion when determining whether to impose a consecutive sentence.

¶ 53    Sentence vacated; cause remanded.